## MITCHELL VS. THE CITY OF MILWAUKEE and others.

Although by a city charter the expense of improving streets and sidewalks is not chargeable upon the city or ward, but only upon the several lots in front of which the work is done, yet such work is public work, done for the city or ward, and the officers of the city in letting the contracts act as public agents.

Sec. 1, chap. 10 of the charter of Milwaukee, requires that all work for the city or either of the wards "shall be let by contract to the lowest bidder, and due notice shall be given of the time and place of letting such contract." Sec. 6, chap. 7, provided for the publication of notice to the owners to do the work within a reasonable time, before the street commissioner should be authorized to let the work on contract. Sec. 13, chap. 158, Private Laws of 1856, amends said last mentioned section by adding, "And if said work be not done within the time limited in such contract, * * the said commissioner may relet such work without further notice." *Held*, that the "further notice" dispensed with is the notice to the lot owner; and the commissioner is still bound to give notice of a reletting of the contract.

Where a contract for such work is relet without notice, the contract *itself* and the assessment upon a lot for work done under it, are *void;* and it is not necessary for the lot owner to appeal from the action of the commissioner in such reletting.

Equity will interfere, in this state, to prevent a cloud upon the plaintiff's title by a sale of his land upon a void tax or assessment, or by the issue of a deed after such sale, where the defect complained of is not merely formal but affects the plaintiff's substantial rights.

In this case the work was first let to the lot owner himself at *three* cents per cubic yard, there being other bids at *seven, fourteen* and *forty-two* cents respectively. The work was relet, without notice, at *forty-two* cents. *Held*, that it was a proper case for equitable relief.

APPEAL from the County Court of *Milwaukee* County.

The case is stated by the court. Judgment in the county court dismissing the complaint.

*Henry F. Prentiss*, for appellant.

*Joshua Stark* and *D. G. Rogers*, for respondent, contended

that after the plaintiff failed to do the work upon his contract, no further notice was required to be given by the commissioners before reletting. Charter, ch. 7, sec. 6, as amended by sec. 13, ch. 158, Pr. Laws of 1856. 2. To the point that the plaintiff having failed to appeal from the decision of the street commissioners, their decision was conclusive upon him, counsel cited *Le Roy v. Mayor &c.,* 20 Johns., 430; *Starr v. Rochester,* 6 Wend., 564; *In re Albany Street,* 11 id., 149; *In re William and Anthony Streets,* 19 id., 678; *In re John and Cherry Streets,* id., 659; *Brooklyn v. Meserole,* 26 id., 132; *Fish v. Rochester,* 6 Paige, 268; *Wiggin v. Mayor &c.,* 9 id., 16; *Van Doren v. Mayor,* id., 388; *Mooers v. Smedley,* 6 Johns. Ch., 28; *Morewood v. New York,* 7 How. Pr. R., 386; *Thatcher v. Dusenbery,* 9 id., 32; *Livingston v. Hollenbeck,* 4 Barb., 10; *Van Rensselaer v. Kidd,* id., 17; *Parks v. Boston,* 8 Pick., 218; *Stokes v. Knarr,* 11 Wis., 389; *Ex parte Mayor of Albany,* 23 Wend., 277.

*By the Court,* PAINE, J.   Work having been ordered to be done on the street in front of the plaintiff's lot, which was chargeable to the lot, the street commissioners proceeded regularly to let the contract, and it was let to the plaintiff himself, he being the lowest bidder. He bid to do the grading at three cents per cubic yard. At the same time there were other bids put in, one at seven cents, one at fourteen and one at forty two per cubic yard. The plaintiff not having entered upon the work under his contract, in what the commissioners held to be a reasonable time, they relet the contract privately at forty-two cents per yard to the same parties who had previously bid at that price. This action was brought to restrain the sale of the plaintiff's lot on the assessment for the work done under that contract, on the ground that the assessment was void.

The single question presented, so far as its validity is concerned, is, whether the commissioners had power to relet the contract as they did, without further notice. The first materi-

al provision to be considered is found in section 1 of chapter 10 of the city charter, which requires that "all work for the city or either of the wards shall be let by contract to the lowest bidder, and due notice shall be given of the time and place of letting such contract." The counsel for the city did not deny that this provision is applicable to this kind of contracts. He said it had been denied by some, on the ground that the work done in grading streets is, by the charter, chargeable to the lots, and therefore cannot be considered as work done "for the city or either of the wards." But although neither the city nor the wards are directly liable to pay for these improvements, yet the works themselves are public works, to accomplish which private property may be taken by the right of eminent domain. And although the lots are held chargeable, yet the validity of that provision was sustained only as an exercise of the taxing power. *Weeks v. Milwaukee*, 10 Wis., 242. The city and its officers, therefore, in providing for and letting the contracts for these improvements, are not acting merely as agents to accomplish a private purpose for the lot owner, but, notwithstanding the special mode in which taxation to pay for them is enforced, are acting as public agents in the accomplishment of public works for the city or ward in which they are located. The work may then fairly be held to be work for the city or ward, within the letter, as it is clearly within the spirit and intent of the provision of the charter above quoted. I believe this construction has been universally acted on in Milwaukee and other cities with similar charters, and that it has never been attempted to let such contracts in the first instance without giving due notice of the time and place.

But by an amendment to the charter, enacted in sec. 13 of chap. 158, Pr. Laws of 1856, it was provided that where the work had been once let, if it was not done within the time limited in the contract, or if no time was limited, then within a reasonable time, the commissioners might "relet such work without further notice." The counsel for the city claims that

this dispensed with the necessity of any notice whatever of the reletting. The language, being general, would certainly bear that construction. But that "general words shall be aptly restrained according to the subject matter to which they relate," and that "a passage is best interpreted by reference to that which precedes and follows it," are familiar rules of interpretation. They are both applicable here. The clause in question was an amendment to section 6 of chapter 7 of the charter. That section provided that whenever the street commissioners determined to make any of the public improvements specified, they should, after taking certain other necessary preliminary steps, publish a notice to the owners or occupants of the lots to do the work in a reasonable time, and that if it was not so done they should then enter into contract for doing it. The amendment then added that after it was so let, if not done under the contract, it "might be relet without further notice." The manifest design of this was to dispense with the necessity of repeating the notice which had been provided for in that section. That notice to the owners was a condition precedent to the right of the commissioners to let the contract in the first instance. It was reasonable to require it to be once given, but would have been unreasonable to require it to be given over again in case a necessity arose for reletting. To avoid that necessity the legislature said it might be relet without further notice, meaning without any such further notice as that which we have just provided for. But those considerations which induced the legislature to require that all work should be let by contract to the lowest bidder, after due notice of the time and place, are as applicable to a reletting as to the first letting. If the first contractor fails to perform, there is no more reason why the rights of the owner should be left unprotected, than there was for leaving them so in the first instance. Yet upon the respondent's construction, this provision, designed for his benefit, is all abrogated by the single phrase "without further notice." For if that dispensed with

all notice of the reletting, it must be held to have dispensed with the duty of reletting to the lowest bidder. For it cannot be assumed that the legislature intended to still require the work to be relet to the lowest bidder, and yet require no notice of the time or place or fact of letting.

These considerations fully show that the notice required by another section of the time and place of letting such work, was not at all in the legislative mind when, in amending section 6 of chapter 7, which provided for a notice to the owners to do the work, they said that if a necessity arose for reletting it might be relet without further notice.

It follows that the reletting without any notice was wholly unauthorized, and that the contract, certificate and assessment were void.

But the charter, chap. 7, sec. 2, provided that any person deeming himself aggrieved by an act of the board of street commissioners, might appeal to the common council, who should examine into and correct the act or order complained of, &c. And the counsel for the city now contends that the plaintiff is precluded from resorting to the remedy he now seeks, because he neglected to take such appeal. He cites a large number of authorities by which he claims to sustain this position. But they wholly fail to do so. Most of them only show that where inferior tribunals or officers act within their jurisdiction, and the statute provides for an appeal from their acts, such acts are final and conclusive unless appealed from; or that where a statute confers discretionary powers upon such officers, their discretion will not be controlled by superior tribunals. These propositions are familiar, but wholly inapplicable here. None of that class of cases show that where such officers act without jurisdiction, their acts are valid and binding unless appealed from. On the contrary their acts in such cases, like those of all other tribunals indeed, are void.

We do not deem it necessary, therefore, to inquire whether the letting of a contract is such an act of the commissioners as

can be appealed from under the section referred to. For even if it could, that appeal was designed only to correct their improper action in matters where they had jurisdiction, and where their acts, unless reviewed, would be valid ; not to furnish an exclusive remedy against their acts without jurisdiction and which are wholly void. Indeed, the whole assumption that a suit like this is a review of the action of those officers, in its proper sense, is a mistake. It is an equitable suit to prevent a cloud on the plaintiff's title, not seeking to revise the action of the city officers, but based upon the assumption that their action was void, not needing any revision for the purpose of rendering it so.

Upon the question whether a court of equity should entertain such a suit, if that were now an open question in this state, some of the cases cited, like the *Mayor of Brooklyn v. Meserole*, 26 Wend., 132, in which the court of errors reversed the decision of the chancellor, would be applicable. But the doctrine has long been settled in this state, that a court of equity will interfere to prevent a cloud on the plaintiff's title, where his lands are threatened to be sold upon a void tax or assessment. It was first decided by this court in the case of *Walker v. Carpenter*, in 1856; was reaffirmed in *Dean v. Madison*, 9 Wis., 408, where Justice COLE gives the history of the former case; and has been repeatedly acted on since. We do not feel called upon, therefore, to review the authorities upon that subject.

It is true we have held in several recent cases, that where the defect complained of was merely formal, not impeaching the justice of the tax, and it appeared clearly that the plaintiff ought to pay the amount, equity would not interfere. *Warden v. Supervisors of Fond du Lac County*, 14 Wis., 618. But there is no room for the application of that doctrine here. The defect now complained of was substantial and important. The omission of all notice to bidders of the time and place of letting the contract, rendered it extremely probable that injustice

would be done, and the facts found by the court render it ex-
tremely probable that in this case it was done.   Bids were put
in at the first letting at seven and fourteen cents per yard, and
yet the commissioners relet at forty-two.   The omission in the
tax proceedings to comply with a provision essential to the pro-
tection of the owner, is sufficient alone to render the decision of
*Warden v. The Supervisors* inapplicable.   But here the facts
found leave upon the matter a very strong scent of actual fraud
and collusion.

The judgment is reversed, with costs, and the cause remand-
ed with directions to enter judgment on the finding in favor
of the plaintiff.