HENN, ADM., v. THE STATE UNIVERSITY.

1. University lands: FORFEITURE OF CONTRACTS. The repeal of section 1052, of the Code of 1851, which (with § 1017) provided that if any purchaser failed to pay the interest due upon any contract for the sale of university lands, the board of trustees might, at their discretion,

consider the contract as forfeited and proceed to resell the land, etc., did not deprive the State university of the exercise of the general equitable right possessed by other vendors of real estate, of rescinding contracts that have become forfeited for non-compliance on the part of the vendee.

2. —— STATUTE. The State university possesses the equitable rights which belong to other vendors of land, as connected with the forfeiture of contracts for laches on the part of the vendee. And the exercise of this right is not in conflict with sections 1975, 1979 of the Revision of 1860.

### *Appeal from Jefferson District Court.*

### FRIDAY, APRIL 19.

THIS cause presents the question of the equitable rights of the parties in cases where the State university has forfeited, for the non-payment of interest, contracts for the sale of university lands.

The material facts are these: The plaintiff's intestate (Bernhart Henn), on the 14th day of June, 1855, entered into a contract with the trustees of the defendant, as follows:

"IOWA CITY, IOWA, June 14th, 1855.

"Contract made and entered into between the board of trustees of the State university of Iowa and Bernhart Henn, of the county of Jefferson and State of Iowa, to wit:

"The said trustees, as authorized by law, have bargained and sold, and do by these presents bargain and sell, unto the said Bernhart Henn, his heirs and assigns, the following described lands, the same being a portion of the two townships of land donated by the United States to the State of Iowa, for the use and support of a university, to wit: The south half of the north-west quarter of section twelve, township seventy-two north, range ten, west, containing eighty acres. The price agreed upon is ten dollars and fifty cents per acre, amounting to the sum of

eight hundred and forty dollars, the one-fourth part of which, to wit, two hundred and ten dollars, has been paid in cash, and the balance secured by the promissory note of said Bernhart Henn, bearing even date herewith, payable ten years from date, and bearing interest at the rate of ten per cent per annum, payable annually on the first day of January, at the office of the treasurer of the board of trustees of Iowa University.

"Now, if the said Bernhart Henn, his heirs, executors or administrators, shall pay or cause to be paid the interest on said note in manner and form as stipulated therein, together with the principal within the time specified, then he will be entitled to receive from the Governor of Iowa a patent for the land herein described. *But in case of failure to make any of the payments aforesaid punctually, as stipulated, all previous payments shall be considered forfeited, and the land sold by the said trustees, or the payment of the money, together with costs and collecting fees, enforced according to law, at the option of the said trustees.*

"In testimony whereof, the parties have hereunto set their names the day and year first above written.

"ANSON HART,
*"Agent of the Board of Trustees of the State University of Iowa.*

" BERNHART HENN,
" By ED. A. TEMPLE, *Agent.*"

And said Henn at the same time executed his promissory note to said board of trustees for the sum of six hundred and thirty dollars, as set forth in the aforesaid contract.

On the 3d day of August, 1864, the said Bernhart Henn filed in the District Court of Jefferson county his petition in which he sets forth that since the execution of said note he has paid large amounts of money thereon,

and has offered and tendered the balance due on said note to the defendants, and has, in all respects, complied with his part of said contract, and that, notwithstanding, defendants refuse to comply with their part of the contract, or to refund the money already received by the said board, and averring that the defendants have sold the land to one David Booth, and making him a party defendant, he prays that said board of trustees may be required to specifically perform their part of the contract, by conveying said land to plaintiff, or, in the event that cannot be done, that they be required to refund the money already received, with interest.

The answer admits the execution of the contract; alleges, that plaintiff failed to pay interest, and that the defendant, as it had a right to do, forfeited the contract and resold the land to Booth.

The following facts were admitted by the pleadings or established by the testimony, viz.:

That Henn agreed to pay for said land at the rate of $10.50 per acre; that he then (June 14, 1855) paid down on the purchase.............................$210 00

| | | | | | |
|---|---|---|---|---|---|
| Paid interest to January 1st, 1856,............ | 36 | 75 |
| " " " " 1st, 1857,............ | 63 | 00 |
| " " " " 1st, 1858,............ | 63 | 00 |
| " " " " 1st, 1859,............ | 63 | 00 |
| " " " " 1st, 1860,............ | 63 | 00 |
| " " " " 1st, 1861,............ | 63 | 00 |

That he then ceased to pay interest, either on this contract or on others of a similar nature, existing between him and the defendant.

Suit to collect this delinquent interest, on the present contract, was commenced, but dismissed, for some informality, at the instance of Henn.

Henn, not having paid interest for the years 1861, 1862 and 1863, the treasurer of the university, by order of the

board of trustees, did, on the 15th day of April, 1864, declare the contract forfeited, and indorsed the note, in the ·said contract mentioned, as canceled; and the land was then sold to one Booth at the rate of ten dollars per acre—less than was then due on the note of Henn.

The treasurer of the university testifies, in reference to this sale, that " the land was so sold because it was thought best for the good of the university, and was sold at the highest price that could be obtained, and because Henn and· Temple, the makers of the note, were considered worthless and supposed to be insolvent; and further, because Henn was, and is, largely indebted to the university on other notes, which it is unable to collect."

Soon after the resale of the land to Booth, Henn, in June, 1864, made to the defendant a written offer to pay the amount of the purchase-money and interest, and demanded a deed; and afterward, in August, 1864, brought the present action, the nature of which is above stated.

The District Court decided, that the plaintiff was entitled to recover of the defendant, all money paid by him on the contract, with interest thereon, and accordingly rendered a decree against the university for the sum of $840.98, to which decree the defendant excepted, and from which the present appeal is prosecuted.

*Stubbs & McCoid* for the University.

*Negus & Culbertson* for the plaintiff.

DILLON J.— This decree must be reversed. The University is a public institution under the control and government of the State legislature. Certain lands, of which that in question is part, were granted to the State for the support of a university, and were by the State donated to the defendant, with power to dispose of the same, in the same manner,

1. UNIVERSITY LANDS : forfeiture of contracts.

and under the same regulations as the sixteenth sections in the different townships. Code, 1851, §§ 1013, 1017.

The law in force at the time the contract in suit was made, expressly provided that if any purchaser fail to pay the interest due upon any contract for the sale of said lands, the board of trustees might, at their discretion, consider the contract as forfeited, and proceed to resell the land, or to collect the purchase-money and interest by suit. Code, 1851, § 1052.

The substance of this provision is embodied in the contract in suit.

In 1858, after the contract in suit, and before the action of the defendant forfeiting it, the legislature repealed so much of said section 1052 as authorized the school fund commissioner to declare contracts forfeited and sell the lands anew.

In its terms, this repealing section does not apply to the board of trustees of the State University.

The plaintiff does not deny, nor could he, had section 1052 remained unrepealed, that the defendant would, by virtue of it and in view of the protracted default, have had the right to declare the contract forfeited and to resell the land.

Does the above repeal of section 1052 deprive the defendant of this right—a right given by the law when the contract was made, and stipulated for in the contract itself?

What was meant by this repeal? In the disposition of this case we will assume, in favor of the plaintiff, that the act of 1858 should be construed to apply to the trustees of the university, as well as to school fund commissioners, although the latter alone are named.

We will also assume, in favor of the plaintiff, that it applies to pre-existing contracts; that it should have a retrospective operation.

We will also assume, in favor of the plaintiff, that the rights of the university are public rights, under the absolute control of the legislature.

With these concessions, the question as to the meaning and effect of the act of 1858, still remains.

The legislature simply said to the board of trustees, "You shall not hereafter forfeit contracts for the non-payment of interest." This act does not exonerate the vendees of school and university lands from the duty of prompt payment.

And if such vendees remain delinquent, they are no less in fault, than if the act of 1858 had not been passed. Nor does the act of 1858 deprive the defendant of the equitable rights which the general principles of the law would give to it in consequence of the non-compliance of its vendees with the terms of their contracts. In this respect the university has at least the same rights as other vendors of land. Now, what, upon general principles, were the equitable rights of the plaintiff at the time the university declared the contract forfeited and resold the land ? The university is dependent upon the yearly receipt of interest on its assets for the means to pay its current expenses. This is the main source of its income. The law contemplates prompt payment of interest by the debtors of the fund. This is abundantly shown by all the legislation on the subject. The plaintiff was, without excuse, delinquent for more than three years. When payment was sought to be enforced, he interposed a technical defense, for he had no real one, and caused the suit to be dismissed.

In 1864 the lands were resold for an amount less than the plaintiff's note and interest. It is not shown or claimed that this resale was for less than their value. The university made no speculation by its action in re-selling the lands.

The plaintiff made no offer to pay until after this

resale, and until·· after, it may be supposed, he knew of this sale.

Then he is seized with a sudden desire to pay up and obtain a deed. Even then he made no tender of money and has never brought any money into court. We are not mistaken in supposing that the offer to pay was intended simply to lay the foundation for an action to recover back what he had previously paid upon the land. He would most probably have been very much disappointed had his offer been accepted.

Under these circumstances we fail to perceive any equity in the plaintiff's case. A court of equity would 2. — Statute. say that his right to demand a specific performance was forfeited by his own laches. He could not, in 1864, insist upon having the land as a matter of right. If it had been worth more than he owed upon it, or if it had been resold for an advance, the case might be different. Under the testimony, we are fully warranted in concluding that, as the land was worth no more than the plaintiff owed upon it, he was not in fact damnified by the cancellation of his note and the resale of the land by the university. Such is our view of the equitable rights of the parties. We cannot affirm the decree below without practically making the university an interest-paying borrower of money from its delinquent debtors—a result never contemplated or intended by the legislation on the subject.

The views above expressed are not in conflict with the legislation of 1860. Rev., §§ 1975, 1979. These sections do not deprive the university, when sued, of the equitable rights which belong to other vendors of land.

It is the judgment of this court, that the decree below should be reversed and the petition dismissed; and it is accordingly so ordered.

Reversed.