Reichard v. Warren County.

Reversed.

REICHARD v. WARREN COUNTY.

| 31 | 381 |
| 118 | 253 |

1. County; BOARD OF SUPERVISORS: ERECTION OF PUBLIC BUILDINGS. The board of supervisors has no power to bind the county for the erection of a public building, the probable cost of which will exceed $5,000, unless thereto authorized by a majority vote of the legal voters of the county, and, when so authorized to exceed this sum, they have no power to bind the county in excess of the amount authorized by the vote.

2. —— IMPLIED CONTRACT. And as the county cannot be made liable on an *express* contract by the board in excess of the amount authorized by the vote, so can it not be made liable on an *implied* one.

3. —— QUANTUM MERUIT: EFFECT OF ACCEPTANCE OF BUILDING. The acceptance and occupancy of a public building by a county will not enable the contractor to recover of the county on a *quantum meruit*, an amount in excess of that authorized by the vote, caused by changes and extensions of the original plan.

*Appeal from Clark District Court.*

MONDAY, APRIL 24.

THE plaintiff filed, in the Clark district court, an amended petition substantially as follows:

"The board of supervisors of said Warren county, on the 5th day of September, A. D. 1865, at a regular session of said board, passed a resolution which is of record in said county, as follows:

"*Resolved,* By the board of supervisors of Warren county, Iowa, that there be submitted to the voters of said county, at the October election, 1865, the question of building a court-house at the county seat of said county, and also the question of a tax of $40,000 with which to build said court-house. The question shall be submitted in the following form: For a court-house; against a court-house; for an annual tax to build a court-house; against a tax to build a court-house. Said tax, if voted, to be levied and appropriated as hereinafter provided by the board of supervisors, and that the clerk be directed to give necessary notice, etc., for the purpose of carrying out this resolution.

"And, afterward, said board gave notice of the submission of said proposition to a vote of the people, as provided by law. That, at a regular election on the 2d Tuesday of October, 1865, a majority of the whole number of votes cast were in favor of said propositions. That, on the 17th day of October, 1865, at a regular session of said board, a resolution was passed appointing a committee to obtain plans and specifications for a court-house, to be built in said county. The said committee reported to said board

in favor of adopting the plan of C. A. Dunham. The report was adopted, and the board then appointed a committee to make a contract for the building and erection of a court-house, according to the said plans and specifications. Said agreement is as follows:

"Agreement, made and entered into this 10th day of April, A. D. 1866, between Jacob Reichard, of Marion county, Iowa, of one part, and James Laverty, W. J. Cochrane, and Newton Guthrie, building committee of the board of county supervisors of Warren county, of the State of Iowa, of the other part, as follows, to wit: The said Jacob Reichard agrees to and with the said James Laverty, W. J. Cochrane, and Newton Guthrie, building committee aforesaid, to do or cause the same to be done all the work of every description mentioned and contained, and shown in the plans and specifications, and subject to all the conditions thereunto attached, for the sum of $37,000.50, to be paid in the manner following, to wit:     *     *     *     * And the said James Laverty, W. J. Cochrane, and N. Guthrie, building committee as aforesaid, for and in consideration of the covenant and agreement made by the said Jacob Reichard, hereby agree to pay the said Jacob Reichard $37,000.50, in the manner above stated.

"Witness our hands, the day and year above written.

"JACOB REICHARD,
"JAMES LAVERTY,
"W. J. COCHRANE,
"*Committee for Board of Supervisors.*"

Said plans and specifications were attached to, and made part of, said written agreement, and provide for the details of said building. In the general conditions following the statement of the details of the work, it is provided that —

"It shall be in the power of the architect to direct such alteration to be made in the works during their progress as may be found expedient: which alteration shall not

vitiate or make void any of the contracts, but shall be performed by the contractors according to the directions they may receive, and the value of the same, whether an addition or deduction, is to be ascertained by the said architect, and to be added to or deducted from the amount of each contract, according to the rate at which the work was undertaken. No allowance will be made to any contractor for extra or additional work, unless it shall have been ordered in writing by the architect, and unless an account or voucher of the said work is delivered to the architect within three days of its performance. * * * * Every person offering a bid must deliver with it a sealed paper containing a copy of the estimate, with the qualities and prices on which each bid is founded, in order to show that it was made on a *bona fide* calculation. The sealed papers of the accepted bid will be opened, and the copy of the estimate therein must be left with the architect, in order that he may be enabled to value any additions or deductions which may arise, according to the prices of such estimate."

On the 8th day of June, 1866, the committee reported the contract to the board at its regular session, and the same was approved and confirmed by a vote of more than a majority of the members of the board of supervisors.

The plaintiff immediately commenced the erection of said building, and continued to work upon the same according to said plans and specifications until the 17th day of July, A. D. 1866, when the board passed the following resolution :

"*Resolved*, By the board of supervisors, that the court-house committee be required to contract with the court-house builder, Mr. Reichard, to enlarge the same to the original plan shown to the board at its January session ; the same being about one hundred and nine feet in length, provided that they can contract for the work at the same rate as that already let out."

And on the 11th day of January, A. D. 1867, said board passed the following resolution:

" The court-house committee are authorized to have the corners and around the doors of the court-house, when quoins are made, to change the same to stone, if the costs do not exceed $1,200."

On the 10th day of January, A. D. 1868, the board of supervisors passed the following resolution:

" *Resolved,* That said committee on court-house be authorized to make changes in the roofings, and other changes in the towers of the court-house, in accordance with the recommendations of the architect, provided said changes do not cost more than $500 over the original plan."

And the said building committee and the said architect, after the plaintiff had commenced the building and erection of said court-house, under and in pursuance of said contract, and according to plans and specifications thereto attached, ordered and directed said several changes referred to in said several resolutions, and divers other changes and deviations from the plans and specifications as follows: said building was, by order of said board of supervisors, by and through said committee, and by said architect extended seventeen feet in length, making it necessary to take up the foundation for the end of said building, and the towers thereof which had been built, and were of the value of $5,000; and changed the character of the foundation walls, and the character of the work from plain, rough, hammered walls, to battened and dressed walls, increasing the necessary cost and expense to plaintiff in the sum of $12,000; and directed a change in the thickness of the walls, increasing the necessary cost and expense $12,000; and directed a change in the roofing and towers, by ordering the erection of three additional towers, and changing the roofing to a Mansard or French roof, increasing the necessary costs and expense in the sum

of $9,000; and said several deviations and alterations made to the said building increased the number of yards of plastering, and increased the necessary costs thereof in the sum of $2,000; and increased the painting and glazing and the necessary costs and expense thereof in the sum of $1,000; and increased the necessary amount of trimming and the costs thereof in the sum of $300; and changed the plan of the vaults and vault doors, increasing the necessary cost in the sum of $800; and said several alterations increased the necessary amount of lumber seventy-three thousand feet, increasing the cost and expense to the said Jacob Reichard in the sum of $6,078.64.

And plaintiff says that he, at the request of said board of supervisors, acting by said committee and architect, made all the said deviations and alterations in said building, furnishing all the materials therefor, and performing all the labor in and about the building and erection of said court-house, and of the said several alterations and additions therein; and that there was no express contract for the said materials furnished or labor performed in the several alterations and additions therein; and that there was no express contract for the said materials furnished or labor performed in the several alterations and additions to said building, as to the value thereof. And the plaintiff says that the materials furnished by him, and the labor performed by him upon said building, is of the reasonable value of $89,090.09, and that the reasonable value of the materials furnished by plaintiff, and the work and labor performed by him in and about the extra work on said building as aforesaid, is the sum of $52,040.09.

Plaintiff says that said architect approved said building, and the said board of supervisors of said county of Warren have, ever since the 1st day of January, A. D. 1869, been in the use and occupancy of said building as, and for the purpose of, a court-house, and all the public offices of said county, and that they have paid the said Jacob

Reichard the sum of $50,211.45 on account of said building, and that there is due from said county to said plaintiff thereon, the sum of $38,878.64, with interest from the 6th day of September, A. D. 1869; that said Jacob Reichard, on the 6th day of September, A. D. 1869, presented to the board of supervisors of said county, his said claim * * for payment, and payment thereof was refused. The plaintiff says that the said submission of the said several propositions to the vote of the people as herein above stated, was the only submission to the vote of the people made by the said board of supervisors in relation to the building of said court-house, or the additions or alterations made upon said original plans and specifications, or the levy of a tax for the payment thereof."

Judgment is asked for the sum of $38,878.64.

The sustaining of a demurrer to this petition is the error assigned.

*Barcroft & Gatch* with *Todhunter & Williamson* for the appellant.

*Bryan & Seevers* and *Nourse & Kauffman* for the appellee.

DAY, Ch. J. — I. Prior to the adoption of the Revision, the county judge was the financial agent of the county, and his authority to contract for the erection of a court-house was without limit. *State ex rel. Brooks* v. *Napier*, 7 Iowa, 425.

1. COUNTY: board of supervisors: erection of public buildings.

The act of March 22, 1860, which changed the system of county government, provides: "That it shall not be competent for said board of supervisors to order the erection of a court-house, jail, poor-house or other building or bridge, nor the purchase of real estate for county purposes when the probable cost will exceed (five) $5,000, until a proposition therefor shall have been first submitted to the

legal voters of the county, and voted for by a majority of all voting for and against such proposition, at a general election; notice of the same being given for thirty days previously," etc. Rev., § 312, subd. 23.

The Code of 1851, sections 114 and 115, Revision, sections 250 and 251, provided for the submission by the county judge of certain questions to a vote of the people, and the manner of submission.

In the case of *Starr & Rand* v. *Board of Supervisors of Des Moines County*, 22 Iowa, 492, it was held that the provisions of the Code of 1851, directing the manner of the submission of a question to the vote of the people by the county judge, are applicable to and govern such submission by the board of supervisors under section 312 of the Revision.

Section 115 of the Code, 251 of the Revision, is as follows:

" The mode of submitting such question to the people shall be the following: the whole question, including the sum desired to be raised, or the amount of tax desired to be levied, or the vote per annum, and the whole regulation, including the time of its taking effect or having operation, if it be of a nature to be set forth, and the penalty for its violation if there be one, is to be published at least four weeks in some newspaper published in the county," etc.

In pursuance of these provisions the board of supervisors of Warren county " submitted to the voters of said county, at the October election, 1865, the question of building a court-house, at the county seat of said county, and also the question of a tax of $40,000 with which to build said court-house."

The board of supervisors are agents of the county, whose powers are defined and limited by the act creating them. Beyond the powers conferred upon them by statute their acts do no more bind the county than do those of a special agent, when he transcends the purposes of his agency, bind

his principal. Before the adoption of this resolution the board of supervisors could contract only for a building the cost of which would not exceed $5,000. Whatever powers they acquired beyond this were derived from the vote of the county. This vote conferred upon them authority to contract to the extent of $40,000. It circumscribed their authority within that limit, just as much as the law before had done within the limit of $5,000. It said to them, "thus far, but no farther." Any attempt upon their part to bind the county beyond the limit defined by this vote was simply a void act. It created no legal liability on the part of the county. And if the board of supervisors could not themselves bind the county beyond the special authority delegated to them, it is too obvious for discussion, that they could not confer upon the building committee and the architect authority to do so.

The plaintiff was bound at his peril to take cognizance of the extent of the authority of those with whom he dealt, and he ought not to have consented to changes increasing the cost of the building beyond that which the board of supervisors had the power to expend. And, while we may deprecate the circumstances which place him in a condition to suffer loss, we cannot for his protection place upon the statute a construction which would deprive the counties of all practical benefits therefrom.

Appellant insists that, when the voters of a county authorize the expenditure of over $5,000 in the erection of a court-house, all restraints are removed, and the board of supervisors may contract to any extent, notwithstanding the limitation in the vote. Such a construction would work a practical nullification of the statute and defeat the evident purposes of its enactment. It cannot be doubted that the object of the legislature was to protect the counties from the unlimited power of expenditure for public buildings, which, prior to the adoption of the Revision, was vested in the county judge.

If the law is now such that under the vote of a county authorizing the appropriation of $6,000 to the erection of a court-house, the board of supervisors may build one costing a million, and bind the county to pay therefor, it must be admitted that the legislature upon the subject has fallen far short of accomplishing the purpose designed. The statement of such a proposition, it seems to us, is its refutation.

II. The same course of reasoning which establishes that the board of supervisors cannot bind a county for the erection of a public building beyond the amount authorized by vote, also proves that beyond that amount the county cannot be made liable upon an *implied* agreement to pay what the structure is reasonably worth.

2. —— implied contract.

To admit such liability would simply enable the board of supervisors to accomplish indirectly what they could not do directly. More than this, it would place it in the power of the contractor to render the county liable without the concurrence or assent of the board of supervisors, and would nullify the provisions of section 313 of the Revision, which declares that no contract for the erection of any public building shall be entered into without a majority of the whole board of supervisors voting therefor, and consenting thereto. No argument can be advanced in support of the view that a county may be made liable upon an implied agreement beyond the limit of the vote, which would not more strongly support the authority of the board to contract to the same extent. No such implied obligation exists. As was forcibly said in the case of *Brady* v. *The Mayor of New York*, 2 Bosw. 187, "the law never implies an obligation to do that which it forbids the party to agree to do."

III. It is claimed, however, that as the county has accepted and is occupying the building, it is under obligation to pay the contractor therefor what it has reasonably

Reichard v. Warren County.

3. —— quantum cost. This position is not tenable. The erection meruit: effect of the building was undertaken under a spe-
of acceptance
of building. cial contract, and the county has already paid thereon the sum of $50,000. Can it be that the county cannot use what has cost it so much, without thereby making itself liable for $39,000 more? What is said in the case of *Zottman* v. *San Francisco*, 20 Cal. 106, is so applicable to the present question that we quote therefrom. The court said: "To the application of the doctrine of liability upon an implied contract where work is performed by one, the benefit of which is received by another, there must not only be no restrictions imposed by the law upon the party sought to be charged against making in direct terms a similar contract to that which is implied, but the party must also be in a situation where he is entirely free to elect whether he will or will not accept of the work, and when such election will or may influence the conduct of the other party with reference to the work itself. The mere *retention and use* of the benefit resulting from the work where no such power or freedom of election exists, or where the election cannot influence the conduct of the other party with reference to the work performed, does not constitute such evidence of acceptance, that the law will imply therefrom a promise of payment." Now, it is apparent that neither of the conditions above spoken of, under which the retention and use of the benefit arising from a work creates an obligation to pay for it, exists in the present case. The law *does* impose restrictions upon the board of supervisors against making a contract similar to that which is sought to be implied; and, second: The acceptance of the building can, in no way, have influenced the conduct of the plaintiff in respect thereto.

If the building had not been accepted he could not have removed the seventeen feet additional length, nor the Mansard roof, nor the stone quoins, nor the additional lumber, plastering, painting and glazing; and if he could

have done so his condition would not thereby have been improved.

The plaintiff is not injured by the occupancy of the building. The county cannot derive the benefits of its contract without the occupancy of the building, and it cannot occupy the building without using that portion of it for which the plaintiff claims extra compensation. Such use constitutes no such evidence of acceptance as to create a liability against the county. We have no hesitancy in coming to the conclusion that the plaintiff cannot recover.

It not unfrequently happens that contractors, by dint of importunity, effect changes in the orginal plan of buildings, for the express purpose of avoiding the contract, and recovering a much larger sum than the contract price, upon a *quantum meruit*. If one erecting public buildings for a county should be circumvented in such an effort, the hardship to which he is subjected is much more apparent than real.

As was well said in *Brady* v. *Mayor of New York*, before alluded to : "It may sometimes seem a hardship upon a contractor that all compensation for work done, etc., should be denied him; but it should be remembered that he, no less than the officers of the corporation, when he deals in a matter expressly provided for in the charter, is bound to see to it that the charter is complied with. If he neglect this, or chooses to take the hazard, he is a mere volunteer and suffers only what he ought to have anticipated. If the statute forbids the contract which he has made, he knows it, or ought to know it, before he places his money or services at hazard. In support of the views herein expressed see *Zottman* v. *San Francisco*, 20 Cal. 96; *Murphy* v. *Napa county*, id. 502; *Butler* v. *City of Charlestown*, 7 Gray (Mass.) 13 ; *McSpeon et al.* v. *Mayor of New York*, 7 Bosw. 601; *Brady* v. *Same*, 2 id. 173; *Farmers' Loan and Trust Co.* v. *Same*, 4 id. 80; *Johnson* v. *Common Council*, 16 Ind. 227; *Jamison* v. *St. Louis Co.*, 33 Mo.

169; *Hull and Argalls* v. *County of Marshall*, 12 Iowa, 142; *Clark* v. *City of Des Moines*, 19 id. 209; *Manning* v. *District Township of Van Buren*, 28 id. 332; *Walcott* v. *Lawrence County*, 26 Mo. 273; *Taylor* v. *The District Township of Wayne*, 25 Iowa, 447; *Taylor* v. *The District Township of Otter Creek*, 26 id. 281.

The authorities cited by appellant do not sustain a view adverse to that here announced. The judgment of the district court, sustaining the demurrer, is

Affirmed.