[No. 993.]

R. SADLER, RESPONDENT, *v.* THE BOARD OF COUNTY COMMISSIONERS OF EUREKA COUNTY, APPELLANT.

COUNTY COMMISSIONERS—MODE OF EXERCISING POWERS.—County commissioners can only exercise such powers as are especially granted, or as may be necessarily incidental for the purpose of carrying such powers into effect; and when the law prescribes the mode which they must pursue, in the exercise of these powers, it excludes all other modes of procedure.

IDEM—CONTRACTS—PUBLIC BUILDINGS.—Under the statute of this state, the commissioners, after letting the principal contract, have the power, without further advertisement, to contract for any alterations or changes in the original plans and specifications; provided the same, in the aggregate, does not amount to the sum of five hundred dollars; but if further changes are ordered to be made, the commissioners must advertise for doing such work, and provide for letting the same to the lowest bidder.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The facts are stated in the opinion.

*Hillhouse & Cole,* for Appellant:

The board of county commissioners had the power to make the orders mentioned and set out in the return to the writ of certiorari, and did not exceed the jurisdiction conferred by law upon the board. (Vol. 2, Comp. L., secs. 3077, 3105; Stats. of Nev. 1879, 45; Vol. 2, Dill. Munic. Corp., secs. 371, 373, 388; 54 Miss. 240.

*Thomas Wren,* for Respondent:

If the commissioners have any authority to modify or alter a contract for the erection of public buildings, it can only be exercised by advertising for proposals and letting the contract, to make the alterations to the lowest responsible bidder. (2 Comp. L. 3070, 3077; *Lehigh Co.* v. *Kleckner,* 5 W. & S. 181.

By the Court, HAWLEY, J.:

By the provisions of the act approved February 24, 1879, the county commissioners of Eureka county were specially " authorized and empowered to erect a court-house of suitable size and dimensions for the county of Eureka, in the town of Eureka, on the site now occupied for court-house purposes by the said county of Eureka; *provided* that the cost of constructing and furnishing the same, the contract to be let to the lowest responsible bidder, shall in no event exceed the sum of fifty-three thousand dollars." (Stat. 1879, 45.)   After giving the notice required by law, a contract for building the court-house according to certain plans and specifications was awarded to the lowest bidder, to wit: to A. Boungard, for the sum of twenty-two thousand dollars.   This contract was executed on the twenty-fourth of May, 1879, and on the twenty-sixth an order was made, approving the bond of said Boungard, given in the penal sum of thirty thousand dollars.   Thereafter, to wit, on the ninth

day of June, 1879, the commissioners " ordered that a contract be entered into with A. Boungard to dig an additional depth, to wit, the depth of at least eleven feet, or until white sand be reached, for a foundation of the new courthouse, and to build a stone wall therein, sufficient to meet the walls already contracted for, and that on the approval of said work by the board, that said Boungard be paid the sum of four hundred and ninety dollars."

On the sixteenth of June, the commissioners " ordered that the inside walls on the east side of the sheriff's room and room adjoining such cross wall between the sheriff's and the adjoining room, be made two feet wide instead of sixteen inches, to receive brick walls and joists; the foundation of said walls to be sunk to the white sand; said work to cost not to exceed five hundred dollars."

On the twenty-first of June, four separate orders were made for other changes and alterations in the original contract, and on the thirtieth of June two other orders of like import (one of which was afterwards rescinded). Each of said orders is conditioned that the cost of the work specified shall not exceed five hundred dollars.

Did the commissioners, under the provisions of the statute, have the power to make the orders entered on the sixteenth, twenty-first, and thirtieth of June, without previous advertisement, as to the letting of such contracts?

The statute provides that " the board of commissioners shall have power and jurisdiction in their respective counties * * * to cause to be erected and furnished a courthouse, jail, and such other public buildings as may be necessary, and to keep the same in repair; *provided,* that the contract for building the court-house, jail, and other buildings be let out after at least thirty days previous public notice * * * to the lowest bidder who will give good and sufficient security for the completion of any contract which he may make respecting the same. But no bid shall be accepted which the board may deem too high." (2 Comp. L. 3077.)

By a supplementary act it is provided, that "in letting all contracts of any and every kind, character, and descrip-

tion whatever, where the contract in the aggregate amounts to five hundred dollars or more, the county commissioners shall advertise such contract or contracts to be let, stating the nature and character thereof, and when plans and specifications are to constitute part of such contract, it shall be stated in the notice where the same may be seen—in some newspaper published in their county for the period of thirty days; in case the contract be for constructing any public building, then the advertisement shall be in that paper published in the county which is nearest the selected location for such building." * . * * (2 Comp. L. 3105.)

It is apparent upon the face of said orders that the commissioners exceeded their jurisdiction in declaring that the cost of said work should not exceed five hundred dollars, instead of should not amount to five hundred dollars.

The judgment of the district court could be sustained upon this technical ground. But upon a careful consideration of the various provisions of the statute relating to the duties of county commissioners, we are of opinion that the action of the court below in annulling all the orders of the board made subsequent to the ninth of June ought to be sustained upon the merits.

The powers of the commissioners and the mode of exercising them, being derived from the statute, must necessarily depend upon its true construction.

The restrictive provisions of the statute were evidently inserted for the protection and benefit of the public, and were intended to guard against favoritism, extravagance, or corruption in the letting of contracts for any public work. When the commissioners act under such authority, they must strictly follow all the conditions under which the authority is given.

The law is well settled that county commissioners can only exercise such powers as are especially granted, or as may be necessarily incidental for the purpose of carrying such powers into effect; and when the law prescribes the mode which they must pursue, in the exercise of these powers, it excludes all other modes of procedure.

Under the terms of the statute, the commissioners, after

letting the principal contract, had the power, without any further advertisement, to contract (with the contractor) for any alterations or changes in the original plans and specifications; *provided* the same in the aggregate did not amount to the sum of five hundred dollars. The statute does not contemplate that any other changes should be made, and as no change could be made without the consent of the original contractor, unless he forfeits or abandons his contract, without rendering the county liable for damages, it is, to say the least, very doubtful whether the commissioners have any authority to make any other contract or further change in the plan and specifications. That question, however, is not directly involved in this case, and need not be decided.

If the power exists to make a contract for any other changes or alterations than those already specified, it could only be exercised by advertising for such work and letting the same to the lowest bidder.

The commissioners can not do indirectly what they are directly prohibited from doing. Under the plea of necessity for a change in the original plan and specifications, they can not ignore the provision of the statute requiring contracts to be let to the lowest bidder.

If the power attempted to be exercised by the commissioners was to receive judicial sanction, it would strip the public of the very protection which the legislature intended to give by the restrictions which it imposed.

The commissioners might, in any case, agree in advance with some favorite contractor, that if he would put in a bid for a sum much less than he knew the work could be done for, they would allow him sufficient for changes and alterations in the plan and specifications to fully remunerate him for his work, thereby defrauding the rights of honest competing bidders, as well as depriving the public of the protection given by the statute.

Take the present case as an example: The commissioners might, if they were so disposed, under some plausible pretext, have so changed the plan and specifications as to have increased the original contract price of twenty-two thousand

dollars to fifty-three thousand dollars, the limit expressed by the act of 1879.

The truth is, that under the provisions of the statute, the commissioners, previous to the letting of any contract for the erection of a public building, should always adopt a plan and specifications, and see that they call for the erection of such a building as may be required. When these have been considered and adopted, the advertisement should call for bids in accordance therewith.

Justice to the competing bidders, as well as to the public, demands that the contract shall be made and carried out in good faith and in strict conformity with the express provisions of the statute. The "changes in plan and specifications," as was said by the supreme court of Pennsylvania, in *Hague* v. *City of Philadelphia,* "may open a wide door to many evils, not the least of which are fraud and favoritism. All experience teaches the utter impossibility of wholly preventing unfairness and advantage taken in the execution of public contracts, even with the most vigilant watchfulness of the public interest. If, in addition, courts of justice hold that public servants can, without authority, bind the public for extras, even in proper and honest cases, they establish a principle which will greatly add to the demoralization of public contracts, and the means of robbing the treasury, whenever fraud and dishonesty can succeed in covering up the wrong." (48 Penn. St. 529.)

The commissioners had no authority whatever to make the orders complained of.

Our attention has not been called to any decided case directly in point, but the principles we have announced, and the conclusion reached, are abundantly sustained by many analogous cases. (See *Zottman* v. *City of San Francisco,* 20 Cal. 96; *Murphy* v. *Napa County,* 20 Id. 502; *Nicolson Pavement Co.* v. *Painter,* 35 Id. 705; *People* v. *Commissioners,* 4 Neb. 157; *Commissioners* v. *Templeton,* 51 Ind. 267; *Bradly* v. *Mayor of New York,* 16 How. Pr. 432; Id., 20 N.Y. 312; *Reichard* v. *Warren Co.,* 31 Iowa, 381; *Mitchell* v. *City of Milwaukee,* 18 Wis. 92; *Kneeland* v. *City of Milwaukee,* 18 Id. 417; *Nash* v. *City of St. Paul,* 11 Minn. 174.)

The judgment of the district court is affirmed.