# CIRCUIT COURT OF BALTIMORE CITY

Filed July 15, 1889.

### H. IRVINE KEYSER ET AL.
### VS.
### MAYOR AND CITY COUNCIL ET AL.

*Morrison, Munnikhuysen & Bond* for complainants.

*Bernard Carter, R. Stockett Matthews* and *R. W. Baldwin* for defendants.

DENNIS, J.—

"The bill in this case was filed by a large number of taxpayers of Baltimore City, on behalf of themselves and all others who may come in and become parties, to restrain the mayor, comptroller and superintendent of lamps from entering into a contract with the Brush Electric Company for lighting certain streets, public buildings, etc., in the city with electric arc lights, and to restrain the mayor and city council from paying out any money under any contract they may have already entered into with said company.

"The defendant company has filed an answer, and a hearing has been had on an application for a preliminary injunction upon the bill and this answer. The other defendants have filed

no answer, but the mayor and city council have been heard in, opposition to granting the injunction through the city solicitor.

"The allegations of the bill and answer, which are proper to be considered in this application, established the following facts:

"By an ordinance of the Mayor and City Council passed on the 29th day of May, A. D. 1889, the Mayor, comptroller and general superintendent of lamps were authorized to contract for the term of one year, at a sum not exceeding forty cents per light per night, with the lowest responsible bidder to light with electric arc lights, the streets, public buildings, etc., of the city where electric arc lights are now used. The second section of the ordinance directed the said officers to advertise twice a week for one week in three daily newspapers for proposals for such lighting, and that 'said proposals shall be opened and the contract for said lighting shall be awarded, in the presence of the bidder or bidders, to the lowest responsible bidder at 12 o'clock on Saturday, June 1, 1889, and said contract shall take effect and said lighting commence on July 1, 1889, and continue one year from said date.'

"Section three provided that a certified check for five thousand dollars should accompany each proposal, and that 'all proposals under this ordinance shall be inclosed in sealed envelopes, marked 'proposals for lighting the city, public buildings, etc., with arc lights wherever used by said city'. The other provisions of the ordinance need not be referred to, as they have no bearing upon the present issues.

"On May 30 and 31 an advertisement appeared, in three of the daily papers signed 'F. W. King, General Superintendent of lamps, etc.,' stating that sealed proposals for such lighting (specifying in full the requirements of the ordinance) would be 'received at the office of the general superintendent of lamps, etc., until twelve o'clock M. Saturday, June 1, 1889.' No other advertisement than this was ever given.

"In accordance with the directions of this notice a certain sealed proposal or proposals was or were received at the office of the general superintendent of lamps before twelve o'clock noon on Saturday, June 1, addressed to the 'Mayor, comptroller and general superintendent of lamps,' accompanied by a duly certified check, as provided in the ordinance.

"The Brush Electric Company, before twelve o'clock noon of the same day, filed its proposal, properly sealed and indorsed, and accompanied by a certified check in the required amount, with the mayor at his office.

"A few minutes after twelve o'clock on the same day (it being the day fixed by the ordinance for the opening of the sealed proposals), without waiting for the superintendent of lamps, who was made by the ordinance one of the board to make the award, and for whom the mayor had sent a special messenger, or the production of any proposals which had been received by him at his office, as called for by the advertisement, and without inquiring of him whether any such proposals had been received, the mayor and comptroller alone, at the office of the former, opened the proposal of the Brush Electric Company and awarded the contract to it.

"At six minutes past twelve, according to the bill, or ten minutes past, according to the answer, the superintendent of lamps made his appearance at the mayor's office and presented the proposals which had been filed with him, but the board refused to open or consider them, treating the proposal of the Brush Company as the only one properly before them, and adhered to their award of the contract to that company.

"The action of the board, to which they were doubtless led through failure to notice the terms of the advertisement, was, I think, clearly unwarranted and illegal.

"Their sole authority to make a contract of the character of the one in question was derived from the ordinance, and could only be exercised in the manner and upon the terms prescribed thereby. The mode in which it was to be exercised being declared, operated as a measure of the power, and an inhibition upon its exercise in any other manner. The first direction in the ordinance was that before the contract should be awarded the mayor, comptroller and superintendent of lamps should advertise twice a week in three daily newspapers for sealed proposals. I think the advertisement actually published, although signed by the superintendent of lamps alone, must be considered as fairly and sub-

stantially complying with this requirement of the statute. None other was ever given, nor does it appear how one more closely following the exact language of the ordinance in being signed by all three of the designated officers could more fully have accomplished the purpose of a public notice. The mayor and comptroller seem to have treated it accordingly, and acted upon it as a substantial compliance with the ordinance; it must be deemed, therefore, to have had their approval and sanction in the form in which it appeared. The fact that it required the proposals to be filed in the office of the superintendent of lamps did not vitiate it.

"No place was fixed by the ordinance for the filing of proposals, and it was proper, and entirely within the implied power of the mayor, comptroller and superintendent of lamps, to designate some one of their three offices as the place for their reception.

"All proposals, therefore, filed in the office of the superintendent of lamps before 12 o'clock noon on Saturday, June 1, in accordance with this advertisement, were properly filed under the provisions of the ordinance, and were from the time of such filing, both in law and in fact, in the possession and custody of the mayor, comptroller and superintendent of lamps. The bidder could do nothing more, and he had done all he was called upon to do, when he filed his proposal in proper form, sealed and indorsed, and accompanied by the certified check, in the office designated by the city officers. This being so, the ordinance required and the bidders and taxpayers were entitled to have these proposals opened and considered before the contract could be legally awarded, in order that all might have the benefit of the competitive bidding which the ordinance designed to secure. The opening and consideration of all proposals properly before them was a condition precedent to the award of any contract. It is true the ordinance said the proposals should be opened at twelve o'clock noon on the first day of June. But a fair and reasonable construction must be given to this provision as to time. It would be a most strained and harsh one to hold that the lawmakers intended that a few minutes difference in point of time, in this case ten at the farthest, should defeat one of the fundamental provisions of the ordinance,

and one which was specially designed for the protection of the public; especially when the competitive bidder had complied in every respect with the law, when such delay as occurred was wholly the fault of one of the three officers to whom was committed the duty of opening the proposals, and when the proposals were already in their possession.

"It is difficult to understand how these officers themselves should have contemplated, when giving the notice by advertisement, that so narrow and strained construction should be placed upon this provision of the ordinance, for the advertisement called for the filing of all proposals in the office of the superintendent of lamps up to 12 o'clock noon of that day. He was bound, therefore, to remain in his office until that hour to receive any proposals that might be handed in; and as his office was in a different part of the building from the mayor's, some short time must necessarily elapse, even if no ordinary and usual delay occurred, before he could arrive at the latter's office.

"I have proceeded upon the theory that the advertisement as published was a substantial compliance with the requirements of the ordinance in this respect. But the answer of the Brush Company denies this, and contends that inasmuch as it was signed by the superintendent of lamps alone, while the ordinance directed all three officers to advertise, it was insufficient and of no effect. It is only necessary to say in reply that if this contention be sound, then a fortiori the awarding the contract to that company was illegal, because in that event the award was made without any advertisement whatever. The ordinance was explicit that advertisement should first be given. The provision was intended to insure to the public the benefit of competitive bidding, and was a condition precedent to receiving proposals and awarding a contract, just as was the opening of all proposals properly before the board a condition precedent to such award. A failure to perform either condition vitiated all subsequent action. (Maxwell vs. Stanislaus, 33 Cal. 393; Mitchell vs. City of Milwaukee, 18 Wis. 92.)

"The answer sets up also two other defenses, viz: 'First, that the Waterhouse Electric Light Company, which

it alleges was the bidder whose proposals were handed into the superintendent of lamps, was not authorized by its charter to do electric lighting as proposed by the ordinance, and therefore the bid of the Brush Company was, as matter of fact, the lowest bid of any one competent to perform the obligation of the contract; and second, that the bill was not filed in good faith, but in the interest of the Waterhouse Company, some of the plaintiffs being interested as stockholders in that corporation.

"Neither of these defenses can be considered on this motion. The rule is that where an injunction is set down for hearing on bill and answer, or on motion to dissolve, 'the answer is regarded and taken for truth, so far as the same is responsive to the bill, but new matter set up by way of avoidance does not avail,' (11 G. & J. 317); and any matter set up in the answer which puts the burden of proving the same on the defendant is not responsive in this rule (3 Bland). In this last case the matter treated as new and not responsive to the bill was the allegation of a want of corporate capacity in the plaintiff. (See also 12 G. & J. 256; 3 Bland 163.)

"These defenses must therefore be established by proof at the final hearing, and cannot now be relied on by the defendant to defeat the preliminary injunction.

"But the most serious objection to the relief asked is one based upon the alleged insufficiency of the averments of the bill. It is contended that as it is not averred that the party whose proposals were filed in the office of the superintendent of lights was a competent and responsible bidder and the bid lower than that of the Brush Company, no injury to the plaintiffs has been done by the award to that company although such award was illegally made, and therefore no injunction should issue.

"I do not think this principle has any application to a case like the present. This is a taxpayers' bill, filed by the plaintiffs on behalf of themselves and all others who may choose to become parties to the suit. They have a right to require that the money they have contributed for the public benefit shall be spent only for the purposes and in the manner authorized by law, and that every security designed to protect its proper expenditure shall be faithfully observed. This right is a vital one to them, and they are required to allege no other injury than that it is about to be violated. They *will be* injured, if the violation is permitted, by the act of legislation alone, no matter how meritorious may be the purposes to which the money is diverted, and the Court is bound to protect them by the exercise of its restraining power. The Court of Appeals has said: 'The Courts in this State have always maintained with jealous vigilance the restraints and limitations imposed by law upon the exercise of power by municipal and other corporations, and have not hesitated to exercise their rightful jurisdiction for the purpose of restraining them within the limits of their lawful authority, and of protecting the citizen from the consequence of their unauthorized or illegal acts.' (M. and C. C. vs. Gill, 31 Md. 375.) The present case falls clearly within the principle thus announced, as the city officers were without authority to enter into any contract until the preliminary conditions imposed by the ordinance were complied with. It was unnecessary, therefore, for the bill to allege more than enough to show that the act sought to be prevented was unauthorized and illegal.

"One other argument must be briefly alluded to. It was urged that as granting an injunction was a matter resting wholly in the discretion of the Court upon a review of all the circumstances, a consideration of the public inconvenience that would result from injunction in this case was a sufficient reason for its being denied. This position cannot be maintained. No consideration of inconvenience, even were it of a character far more serious than has been suggested as likely to result in this case, can avail to defeat the operation of the rule that public money shall only be spent in the manner prescribed by law. This rule is inflexible, and is based upon such high considerations of public policy that all questions of convenience and inconvenience are insignificant in comparison. The taxpayers have a right to insist upon its rigid enforcement, and if public inconvenience results it must be borne until the proper authorities correct the evil by appropriate legislation."