TOWN OF HARTLEY, Appellee, v. FLOETE LUMBER COMPANY
et al., Appellants.

CONTRACTS:   Validity—Sale by Councilman to City—Recovery for
Value of Goods.  Where the councilman of a city voted to pur-
chase merchandise from a company in which he was a stock-
holder, director, and manager, the contract was contrary to
public policy, under Section 668, Subdiv. 14, Code Supp., 1913;
but *held*, there being no fraud or concealment in the sale, that
the company could recover the actual value of the merchandise
from the city.

*Appeal from O'Brien District Court.*—WILLIAM HUTCHIN-
SON, Judge.

MARCH 20, 1919.

ACTION to cancel certain warrants issued by the plain-
tiff city to the defendant company.  Decree as prayed.  Opin-
ion states the facts.—*Reversed and remanded.*

*Heald & Cook* and *J. T. Conn,* for appellants.

*T. E. Diamond,* for appellee.

Gaynor, J.—The plaintiff brings this action in equity, praying the cancellation of certain warrants issued by it to the defendant company. Its theory is that the warrants are void, and it predicates this on substantially these facts:

That the defendant the Floete Lumber Company is, and, at the time of the matters complained of, was, a private corporation, with one of its branch offices and yards in the plaintiff town; that the other defendant, Grotewohl, is and was, at all times covered by the transactions herein complained of, a stockholder and member of the board of directors of the defendant company, and its local manager at the town of Hartley, and also a duly elected, qualified, and acting councilman of plaintiff city; that, while so a member of the city council, and sustaining the relationship hereinbefore indicated to the defendant company, defendant sold and delivered to the town of Hartley, through Grotewohl, certain goods, wares, and merchandise, and in payment therefor, issued the warrants in question.

It appears that Grotewohl, as a member of the city council, voted for the purchase of the material, for the allowance of the bills, when presented, and for the issuance of the warrants involved. At the time this action was commenced, these warrants were all in the hands of the defendant company, and unpaid.

Grotewohl's term of office expired on the 3d day of April, 1916, and a new council was elected. On the 7th day of April, 1916, plaintiff, through its new council, served notice on the defendants that the warrants would not be paid, and instructed the treasurer not to pay any of the warrants. It further appears in the stipulation of facts that the city, through its council, had full knowledge of the purchase, when made, and the relationship of the parties, and the use

to which the things purchased were put, and had this knowledge at the time the bills were approved and allowed, and the warrants ordered. It further appears that the reasonable market value of the goods purchased and received by the plaintiff is represented by the warrants issued, and that some of the goods received have been used by the city, and cannot be returned, while other of the material is of such a character and so used that it is impossible to return it without dismantling or tearing down or destroying the building or structure into which it has been incorporated. It further appears that the property was a proper subject of purchase, and was bought and used for the benefit of its citizens.

As we said before, this action is brought to cancel the warrants issued, on the theory that they are void because of the relationship of Grotewohl to the two contracting parties, and because of his interest in the subject-matter of the contract.

The defendant company, in a cross-petition, alleges that the goods were sold at the fair market value, were received and used by the plaintiff, and are still retained by it, and were of value to the plaintiff. It prays that, if the court finds that the warrants are void because of the facts alleged, defendant have judgment for the actual value of the property received and retained and used by the plaintiff, without profit. It is conceded by the plaintiff that the profit to defendant did not exceed 20 per cent, and that, after deducting $445.84 from the total amount of the bills as audited and approved by the council, and as represented by the warrants, the balance would represent the actual cost of the merchandise, without profit of any kind to the defendant. The court, however, found that the warrants were void, ordered them canceled, and enjoined the plaintiff from paying to the defendant any sum whatever for the material furnished; and from this decree, the defendant appeals.

Section 668 of the Code of 1897, Subdivision 14, provides:

"No member of any council shall, during the time for which he has been elected, be appointed to any municipal office which shall be created, or the emoluments of which shall be increased, during the term for which he shall have been elected; nor shall he be interested, directly or indirectly, in any contract or job for work, or the profits thereof, or services to be performed for the corporation."

We have had occasion to construe this statute in *Bay v. Davidson*, 133 Iowa 688, at page 690, and said that the purpose of the statute was to prevent councilmen, directly or indirectly, from making profit out of their relationship with the city; that the compensation provided for was the only compensation which councilmen were entitled to receive; and that the compensation cannot be increased through profits made, directly or indirectly, in the sale of goods or merchandise to the city. It was held that contracts made by a councilman, acting for the city, with himself, or with corporations in which he was pecuniarily interested, were against public policy, and not enforcible against the city, because of the temptation it placed before these officers to profit in double dealing. The thought running through the cases seems to be that one intrusted with the business of others cannot be allowed to make such business an object of pecuniary profit to himself. Nothing can be added to what has been already said by this court on this question. Such contracts are voidable at common law. This court has refused to recognize them or enforce them. See *Bay v. Davidson*, supra; *James v. City of Hamburg*, 174 Iowa 301, 310, and cases therein cited. The court was right, therefore, in canceling the warrants and refusing to recognize or enforce the contract.

But the question still remains: Is this defendant company without remedy in a court of equity?

The contract, it is true, was made in violation of public policy, and the contract, as such, was not enforcible in law or equity; and, while executory, any attempt to enforce it would have been enjoined. It was a voidable contract, and, upon proper showing, the courts refused to recognize and enforce it. We have, however, this situation before us: The plaintiff city acted through its council—a body of men of its own choosing. The things involved in this suit were needed by the city. The city had a right to, and, because of its needs, it was its duty to purchase these things somewhere. The purchase was neither against the statute nor against public policy. The purchase was not wrongful in itself. It became unenforcible only because of the relationship of the parties to the transaction. The rule of public policy which prevents the enforcement of contracts made under the circumstances presented in this case, rests upon the thought that it is essential to the public good to keep all parties occupying a fiduciary character, to the strict performance of the duties they have assumed in that character; and when they depart from this, the court will not allow them to profit by their wrong. The temptation to violate this rule of public policy lies in the profit which may come to the individual from its violation. Remove all hope of profit, and you remove at once the temptation. It goes without saying that one who assumes that relationship to a city which the law imposes upon a councilman, rests under an obligation of absolute loyalty to the city whose interests he has assumed to serve, and the law will not tolerate his entering into any relationship by which his individual interests could possibly conflict with the interests of his constituents. They are entitled exclusively to the exercise of his best judgment in their behalf. As said in some cases, a councilman is not permitted to act both as employer and employee. He is intrusted with public functions for the public good. His duty is to protect and promote the inter-

ests of the city, and not his own. This rule has been rigidly enforced, because of the temptation placed upon a public officer to betray the trust for the advancement of his own interest. It is even greater than in private life,— though even there, one is not permitted to serve two masters,—because the risk of detection is less in the one case than in the other. As said in one case, a judge cannot be permitted to hear and decide his own case, or one in which he is personally interested. The judge might rise above the temptation, but because of the temptation, he is not permitted to act. No public officer can be permitted to reap any profit or personal advantage from his official acts. It is the profit that furnishes the bait. Remove the bait, and you take from it all the alluring features.

It might be argued that to allow the wrongdoer to recover the actual cost of the thing sold, would be to tempt him to try to profit in his own wrong, because, if he failed to make effectual the contract and reap the profit, he would at least be without substantial injury; that it would offer temptation to try to circumvent the law, without fear of substantial loss. But again, the temptation to wrong lies in the profit that comes from the wrong. Remove all hope of profit, and you remove all temptation to do the wrong out of which the profit might come.

There is no claim made in this case that there was any actual fraud practiced by either of the parties to the transaction out of which this controversy grows. Nothing was done in the dark, and there was no effort at concealment. The plaintiff city has received substantial benefits. We think the court should have allowed the defendants to recover the actual value of the property received and retained by the plaintiff, and that the court erred in enjoining the defendants from receiving anything for the goods furnished. We are not without authority on this question from our own court. It has support in the holding of this court in

*Diver v. Keokuk Sav. Bank,* 126 Iowa 691, 700, which is fully supported by the reasoning found in *Kagy v. Independent Dist.,* 117 Iowa 694. In the last-named case, it is said:

"There is nothing morally wrong or inequitable in saying to a school district that it must pay a fair consideration for benefits received, before it will be permitted to repudiate an executed contract by virtue of which it has obtained, and continues to hold, something of substantial value."

In the *Diver* case, supra, it was said:

"We may also concede that anyone interested might, during this time [that is, while the contract was executory], have challenged the contract in proper and timely proceedings for that purpose. But the question here presented is much broader than this. It is this: May a tax-payer, after the work has been performed, and accepted by the city—there being no actual fraud shown—successfully resist payment therefor because of a violation of Section 943 of the Code? That question was decided adversely to appellant in *Kagy v. Independent Dist.,* 117 Iowa 694."

There is, a decided conflict among the authorities upon the right of the plaintiff to recover under the facts here involved, but this court is committed to the doctrine herein announced, and we think the rule is equitable, and we have no disposition to depart from it.

For the reasons herein given, the judgment of the district court is reversed and remanded for decree in accordance with this opinion.—*Reversed and remanded.*

LADD, C. J., EVANS and STEVENS, JJ., concur.