In the Matter of WILLIAM E. SHADDOCK, Appellant,
against WILLIAM F. SCHWARTZ, Commissioner of
Finance and Accounts of the City of Buffalo, et al.,
Defendants.

WILLIAM G. FRASER, Respondent.

Municipal corporations — Buffalo (city of) — equity — tax-
payer's action — injunction — statute authorizing cities to
pay equitable claims does not limit compensation to outlay,
excluding profit — measure of compensation — burden on one
assailing award to show that it was made without reference
to value — presumption of regularity — contract let on erro-
neous bid — moral obligation to pay reasonable value of work
performed.

1. Under subdivision 5 of section 20 of the General City Law
(Cons. Laws, ch. 21) authorizing cities to pay or compromise equitable
claims, there is no basis for a holding that compensation is to be
limited to the claimant's outlay, excluding the customary profit.
Rather is it measured by the fair and reasonable value of his material
and labor, which includes such profit as would be due him in an action
on a *quantum meruit.*

2. The agreed price, if excessive, is not the measure of the payment,
but the burden is on one assailing an award to show that the city
authorities gave effect to the promise without reference to value.    In
the absence of such a showing, the allowance of the claim must be
given the support of those presumptions of regularity that protect
official action.

3. A contention that acceptance by a municipality of the fruits
of an illegal contract does not supply the basis for a moral obligation,
cannot be upheld, where there was advertisement and public bidding,
and a slip by the successful bidder in making his bid, but the finding
is that he acted without guile, in the genuine, if mistaken, belief that
the bid was regular and valid.    Upon acceptance of the work per-
formed under these conditions there arose a moral obligation to pay
its reasonable value, which might be converted into a legal obligation
in the discretion of the city authorities.

*Matter of Shaddock* v. *Schwartz,* 220 App. Div. 470, reversed.

(Argued October 10, 1927; decided November 22, 1927.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 7, 1927, which reversed an order of Special Term granting a motion for a peremptory order of mandamus and dismissed the petition.

*Frank J. Fitzpatrick* and *William P. Brennan* for appellant.    A moral or equitable claim arises where money or other property of a party is received under such circumstances that the General City Law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same. (*Williamsburg Savings Bank* v. *State*, 243 N. Y. 231; *U. S.* v. *Realty Co.*, 163 U. S. 427; *Cole* v. *State*, 102 N. Y. 48; *O'Hara* v. *State*, 112 N. Y. 146; *Cayuga County* v. *State*, 153 N. Y. 279; *Munro* v. *State*, 223 N. Y. 208; *Oswego & Syracuse R. R. Co.* v. *State*, 226 N. Y. 351; *Trustees* v. *Roome*, 93 N. Y. 326; *Gaynor* v. *Vil. of Port Chester*, 230 N. Y. 210; *W. I. B. Co.* v. *Attica*, 119 N. Y. 204; *Town of Guilford* v. *Supervisors of Chenango Co.*, 13 N. Y. 143; *Mayor* v. *Bank*, 111 N. Y. 459; *People* v. *Westchester Bank*, 231 N. Y. 465; *Matter of Kendall*, 85 N. Y. 306; *Brown* v. *Mayor, etc.*, 63 N. Y. 239.)    The State may authorize and sanction payment of a just and equitable obligation.    It may dispense with such limitation as it has itself imposed, if in furtherance of justice. (*Williamsburg Sav. Bank* v. *State*, 243 N. Y. 231; *Dady* v. *Prendergast*, 144 App. Div. 308; 203 N. Y. 1; *Matter of Green*, 166 N. Y. 485.)    The appellant's claim is an equitable claim within the contemplation of the statute.    Tested in whatsoever way, it fulfills every requirement.    The unquestioned receipt of a benefit by the city and the utter freedom from culpability of the appellant fulfill the most exacting test. (*Trustees* v. *Roome*, 93 N. Y. 326; *Matter of Kendall*, 85 N. Y. 308; *Brown* v. *Mayor, etc.*, 63 N. Y. 239; *Ward* v. *Kropf*, 207 N. Y. 478; *Munro* v. *State*, 223 N. Y. 208; *O. & S. R. R.*

19

*Co.* v. *State,* 226 N. Y. 351; *Cayuga Co.* v. *State,* 153 N. Y. 279; *Mayor* v. *Bank,* 111 N. Y. 459; *O'Hara* v. *State,* 112 N. Y. 146; *Bridge Co.* v. *Attica,* 119 N. Y. 204; *Gaynor* v. *Vil. of Port Chester,* 230 N. Y. 210; *U. S.* v. *Realty Co.,* 163 U. S. 427.)

*Henry Adsit Bull* for respondent. The injunction in the taxpayer's action should be construed to prevent any further payment whatever to the petitioner for work done or materials furnished under the illegal contract. (*Brady* v. *Mayor of New York,* 20 N. Y. 312; *Hart* v. *City of New York,* 201 N. Y. 45.) Even the Legislature would not have power to authorize payment of the claim and in effect overrule the judgment in the taxpayer's action, to which both the city and the petitioner were parties. (*Greene* v. *Niagara County,* 55 App. Div. 475; 166 N. Y. 485; *Hart* v. *City of New York,* 201 N. Y. 45.)

CARDOZO, Ch. J. The city of Buffalo advertised for bids for the plumbing work at a hospital. The plans and specifications provided that the bid for the main work be stated separately from bids for six additional items. Shaddock, the present appellant, without separating the items, put in a gross bid for $45,246. Other contractors put in bids separating the items, but higher in their totals. Thus, the bid of the Power Efficiency Corporation, represented by the respondent Fraser, was $38,900 for the main work and $8,973 for the additional items, a total of $47,873, and the bids of others were still higher. The council awarded the contract to Shaddock, who went forward with the work.

Before the contract was awarded, Fraser, the next bidder, lodged a protest ·vith the council against the acceptance of Shaddock's bid because of its defective form. When his protest was overruled, he began a taxpayer's suit. He failed to obtain a temporary injunction, and when the case came on for trial, the work was

almost finished.  The trial judge held that the variance
between the bid and the requirements of the plans and
specifications had a tendency to impair the opportunity
for free and equal competition between bidders on the
job (Charter of city of Buffalo, L. 1914, ch. 217, § 50),
and that the contract was illegal, but that in view of the
small amount of work that then remained to be done,
an injunction should be refused.  The Appellate Division
modified the judgment by granting an injunction (215
App. Div. 861).  It held, however, with the trial judge
that Shaddock had acted without fraud, collusion  or
bad faith.  Upon appeal to this court, the judgment was
affirmed (243 N. Y. 554).

The work was almost done, as we have seen, when the
taxpayer's action was decided by the trial judge.  It had
been finished altogether when the injunction was granted
by the Appellate Division, though there was nothing in
the record at that time to show that this was so.  Upon
the affirmance by this court, the contractor sought relief
in new directions.  The balance unpaid under the con-
tract was then about $7,500.  There was also an unpaid
item of $319.12, the cost of extra work.  Shaddock filed
with the council a petition under General City Law,
section 20, subdivision 5 (Cons. Laws, ch. 21), that the
sum unpaid under the contract be allowed accordingly.
He submitted at the same time an opinion of the corpora-
tion counsel reciting the facts and supporting the petition.
The council referred the petition to the committee on
claims to investigate and report.  Thereafter a resolution
was adopted directing that a warrant issue in favor of
the petitioner for $7,837.12, the unpaid balance.  Fraser
again protested.  The city auditor, yielding to the pro-
test, refused to draw the warrant.  There followed a
proceeding for mandamus, in which Fraser intervened.
The Supreme Court at Special Term held that the claim
had been properly allowed and ordered that a mandamus
issue.  The Appellate Division took the ground that the

payment should have been restricted to such a sum as would repay the petitioner without profit for any expense he had incurred. Payment of the full amount called for by the contract was held to be equivalent to a breach of the injunction. The order of mandamus was reversed, and the proceeding dismissed.

Section 20, subdivision 5, of the General City Law (Cons. Laws, ch. 21) provides that "subject to the constitution and general laws of this state," every city is empowered "to pay or compromise claims equitably payable by the city, though not constituting obligations legally binding on it, but it shall have no power to waive the defense of the statute of limitations or to grant extra compensation to any public officer, servant or contractor" (cf. Greater N. Y. Charter, § 246). We find no basis for a holding that compensation under this statute is to be limited to the claimant's outlay, excluding the customary profit. Rather is it measured by the fair and reasonable value of his material and labor, which includes such profit as would be due him in an action on a *quantum meruit* (*Vickery* v. *Ritchie*, 202 Mass. 247, 250, 252; 2 Sedgwick, Damages, § 650). To that extent the city has been enriched at his expense. True, of course, it is that the agreed price, if excessive, is not the measure of the payment. What was promised is no longer payable by force of any obligation inherent in the promise. It is payable, if at all, by force of the equivalence between the promise and the value (Keener, Quasi Contracts, p. 22).

We are told that the council gave effect to the promise without reference to value. The burden is on Fraser, assailing the award, to show that this was done. Nothing in the record supplies a sufficient basis for a holding that the burden was sustained. We must presume in the absence of any showing to the contrary that the council made appropriate investigation and was satisfied that the claim had support in equity and justice. The form

of the petition is criticized as emphasizing the obligation
of the promise to the exclusion of any other. No doubt
its form could be improved. We think that, taken as a
whole, it fairly apprised the council of a claim by the
contractor that the money was equitably due irrespective
of the bargain. The council is not a court, and petitions
for the allowance of moral obligations are not required
to be phrased with the nicety of pleadings. The very
fact that the claimant's bid was lower than that of any
other contractor, lower even than Fraser's, was evidence
that it did not exceed the reasonable value, evidence
rebuttable, of course, but persuasive in the absence of
any showing to the contrary. Examination of the record
in the taxpayer's action would have tended to sustain
that inference rather than to repel it. The taxpayer,
Fraser, knew the value of the work for he was by occupa-
tion a contractor and himself a bidder on the job. He
testified at the trial without hint of a belief that the price
was in excess of what was reasonably due. Upon the
surface of the transaction these evidences of value were
apparent to the council when the petition was submitted.
If other evidences were needed, they must be presumed
to have been uncovered and considered. We are to give
to the allowance of the claim the support of those pre-
sumptions of regularity that protect official action. This
does not mean that the taxpayer is helpless against waste.
His remedies are ample if he can show that the award
exceeds the value. No such showing is attempted in the
record now at hand.

The award is assailed, however, upon grounds more
fundamental. In the view of the protesting taxpayer,
the claim for reimbursement is lacking altogether in
equity and justice, though it be limited to the value of
benefits conferred. There are decisions to the effect
that at common law, in the absence of any statute to the
contrary, acceptance by a municipality of the fruits of
an invalid contract will not supply the basis for a legal

obligation on the footing of a *quantum meruit* (*Hart* v. *City of New York*, 201 N. Y. 45, 55). The taxpayer insists that it does not supply the basis for a moral obligation. The argument in his behalf has been pressed with sincerity and vigor, but we are unable to uphold it. His conception of equity and fairness, the thing demanded by good conscience, is one of a justice unrelieved by tenderness or charity. Such at least is the goal to which his argument would lead us. We think the council was not limited in its estimate of moral obligation to this Draconian severity. An act is to be viewed, not singly and *in vacuo*, but in the setting of the whole occasion, if we would judge its moral quality. So viewed, what was done and suffered by the claimant may reasonably be held in a forum of conscience to have clothed him with a title not wholly fanciful or illusory to restitution or an equivalent. We are not dealing with a case where city and contractor, indifferent to the law, or with conscious disregard of its requirements, have improved a public building without notice to the public of the letting of the contract. If such a case arises, there will be need to determine whether a moral obligation can be built upon so flagrant a default. We are dealing with a case where there was advertisement and public bidding and a slip by the successful bidder in making up his bid. The finding is that he acted without guile, in the genuine, if mistaken, belief that the bid was regular and valid. There is not even the element of injury to the city's purse. On the contrary, the city would have been the loser if the bid had been rejected, for the contract must then have gone to Fraser, the bidder next above. We think the adjudged cases supply ample basis for the conclusion that upon acceptance of the work performed under these conditions there arose a moral obligation to pay its reasonable value, which might be converted into a legal obligation in the discretion of the council (*People ex rel. Dady* v. *Prendergast*, 144 App. Div. 308; 203 N. Y. 1;

*Williamsburgh Sav. Bank* v. *State,* 243 N. Y. 231; *O. & S. R. R. Co.* v. *State,* 226 N. Y. 351; *U. S.* v. *Realty Co.,* 163 U. S. 427).

Assent to this conclusion does not mean that the remedy of injunction at the instance of a taxpayer is reduced to mere futility. The injunction destroys the obligation of the contract. If work is still unfinished, the contractor must desist. The halt is peremptory and final. If work has been done, there can be no claim for reimbursement beyond the reasonable value, nor even this unless the council shall find an equity sufficient to abate the rigor of the law.

The order of the Appellate Division should be reversed and that of the Special Term affirmed with costs in the Appellate Division and in this court.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Ordered accordingly.