JOHNSON COUNTY SAVINGS BANK et al., Appellants, v. CITY OF CRESTON et al., Appellees.

No. 39746.

June 23, 1930.

Supplemental Opinion June 20, 1931.

Kelly, Shuttleworth & McManus, W. H. Bailey, R. Brown, for appellants.

George A. Johnson, Kenneth H. Davenport, for appellees.

■ MORLING, C. J.—Jackson v. Creston, 206 Iowa 244, involving the same facts, was successfully maintained by lot owners to cancel special assessments for the work here involved. By the present suit the contractor and its assignee are endeavoring to establish a corporate liability against the city, first upon the contracts and alternatively for the alleged value of the work done under the contracts. By each of the four contracts involved the plaintiff contractor agreed to furnish and apply to the wearing surface of streets coatings of bituminous oil for the agreed consideration of 50c per square yard, which the city agreed to pay with the reserved right to assess the cost against benefited property and to issue bonds.

Defendants contend that there was in reality but a single contract for all of the work specified in the four and that formal division was made into four contracts for the purpose of evading the requirements of the budget law by which the governing body of the city, before entering "into any contract for any public improvement to cost $5,000 or more," is required to adopt plans and specifications, proposed form of contract, give notice and hear objections if any are made. Code, 1927, Sections 352, 353. By Section 351, "The words 'public improvement' as used in this chapter shall mean any building or other construction work to be paid for in whole or in part by the use of funds of any municipality." It seems to be assumed in argument here that the work in question is "building or other construction work." There is a distinction between "construction work" and "repairs." Fuchs v. Cedar Rapids, 158 Iowa 392; Ellyson v. Des Moines, 179 Iowa 882; Farraher v. Keokuk, 111 Iowa 310. The consequences of holding such work as that sued for to be or not to be "building or other construction work" within the meaning of the budget law might be very serious and far reaching and we prefer not to pass on the question until it is fairly presented and argued.

■ The trial court, among other grounds for its decision, held that the contracts were in contravention of the statute requiring such work to be let on competitive bidding. Plaintiffs apparently assume that such statute applies only to special assessment proceedings and not to contracts by which the city binds itself to pay. We have not the benefit of an argument by appellee upon this question.

Section 6004, Codes, 1924, 1927, Section 19, 40th Ex. G. A., S. F. 169, commands:

"All contracts for the construction or repair of street improvements and for sewers shall be let in the name of the city to the lowest bidder by sealed proposals, upon giving notice by two publications in a newspaper published in said city, the first of which shall be not less than fifteen days before the date set for receiving bids, which notice shall state as nearly as practicable the extent of the work, the kinds of materials for which bids will be received, when the work shall be done, the terms of payment fixed, and the time the proposals will be acted upon. If there be no such newspaper, such notice shall be given by posting the same in three public places within the limits of such city."

This section is found in Chapter 308, Codes, 1924, 1927, as to which appellants say "the various steps required by the chapter are necessary only when it is proposed to assess all or a part of the cost against private property." The section originated in Section 813, Code, 1897, and previous Codes. Section 813 was contained in Chapter 7, Title V. This division into sections, chapters and titles was made by the legislature. By Section 832 in that chapter the cost of the repair of any street improvement might be paid from the city improvement fund or the general revenue. Section 813, Code, 1897, did not require contracts for repairs to be let on competitive bidding. The requirement of that section applied only to the making or reconstruction of street improvements and sewers. The extension of the provisions of Section 813 to contracts for repairs was effected by the codifying act 40th Ex. G. A., S. F. 169, Section 19. Nor did the provisions for assessment against benefited property under Chapter 7, Title V, Code, 1897, extend to repairs. Ellyson v. Des Moines, 179 Iowa 882, 891; Fuchs v. Cedar Rapids, 158 Iowa 392. We are unable to hold that all the provisions of Chapter 308, or of the corresponding chapter of the Code of 1897, or of the codifying act of the Fortieth Extra General Assembly, apply only to special assessment proceedings, and we discover no reason for limiting the requirements of Section 6004 to contracts in special assessment proceedings.

The contracts in controversy were entered into without

submission to competitive bidding. The statute is peremptory that "all contracts for the construction or repair of street improvements and for sewers shall be let in the name of the city to the lowest bidder by sealed proposals, upon giving" prescribed notice. The statute is a prohibition upon letting such contracts in any other mode. Des Moines v. Gilchrist, 67 Iowa 210; District Township v. Dubuque, 7 Iowa 262, 276; Coggeshall v. Des Moines, 78 Iowa 235; Ebert v. Short, 199 Iowa 147, 152. The city undertook to have the repairs in question made by contract. Having undertaken to have them made by contract it was required to let the contract on competitive bidding. Dickinson v. Poughkeepsie, 75 N. Y. 65, 68. It is a general principle that a municipal contract entered into in violation of a mandatory statute, or a contract in opposition to public policy is not merely voidable but void (Coggeshall v. Des Moines, 78 Iowa 235), and that no contract for services rendered or goods furnished pursuant thereto can be implied, nor may the acceptance of benefits thereunder be made the basis of a liability by estoppel. Reichard v. Warren County, 31 Iowa 381; Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, 253; Langan v. Sankey, 55 Iowa 52, 54; Barngrover v. Pettigrew, 128 Iowa 533; Cole v. Brown-Hurley Co., 139 Iowa 487; McPherson v. Foster Bros., 43 Iowa 48; Citizens' Bank v. Spencer, 126 Iowa 101, 105; Iowa Electric Co. v. Winthrop, 198 Iowa 196, 201; Stropes v. Board of Commissioners, 72 Ind. 42; Peck-Williamson Co. v. Steen School Township, 66 N. E. (Ind.) 909; Worell Mfg. Co. v. Ashland, 167 S. W. (Ky.) 922; Eaton v. Shiawassee County, 218 Fed. 588; Van Buren Light and Power Co. v. Inhabitants of Van Buren, 109 Atl. 3, 118 Me. 458; 43 C. J. 248; 44 C. J. 120, 138; 3 McQuill. Mun. Corp., Section 1164; Strickler v. Consolidated School District, 291 S. W. (Mo.) 136; Carter v. Reynolds County, 288 S. W. (Mo.) 48; Carter v. Bradley County Road Improvement District, 246 S. W. 9, 155 Ark. 288; Gaddis v. Barton School Township, 164 N. E. (Ind.) 499.

Municipal corporations are the creatures of the legislature. They have such powers to contract, and only such powers, as the legislature grants to them. When the legislature withholds power to contract, or permits the exercise of the power in a given case only in accordance with imposed restrictions, the corporation may no more bind itself by implied contract than

by the forbidden express contract. All persons dealing with a municipal corporation are charged with notice of the limitations upon its power. Those limitations may not be exceeded, defeated, evaded or nullified under guise of implying a contract. A municipal contract let without competitive bidding when the statute requires competitive bidding, is void, and no recovery may be had either upon the purported express contract or upon an implied contract to pay the reasonable value of the services or material furnished thereunder. Weitz v. Independent District, 79 Iowa 423; Zottman v. San Francisco, 20 Cal. 96, 81 Am. Dec. 96; Brady v. Mayor, 16 How. Pr. (N. Y.) 432 (see discussion of these cases in Reichard v. Warren County, 31 Iowa 381); Reams v. Cooley, 152 Pac. (Cal.) 293; Dickinson v. Poughkeepsie, 75 N. Y. 65; Cawker v. Central Bitulithic Paving Co., 121 N. W. 888, 140 Wis. 25; Richardson v. Grant County, 27 Fed. 495; Bristol v. Dominion National Bank, 149 S. E. (Va.) 632; Springfield Milling Co. v. Lane County, 5 Ore. 265; Detroit v. Robinson, 38 Mich. 108; Twohy Bros. Co. v. Ochoco Irr. Dist., 210 Pac. (Ore.) 873; Nellis v. Minton, 216 Pac. (Okla.) 147, 149; People v. Gleason, 25 N. E. (N. Y.) 4; McDonald v. Mayor, 68 N. Y. 23; Wagner v. Milwaukee, 220 N. W. (Wis.) 207; 19 R. C. L. 1068; Strauch v. San Mateo, 286 Pac. (Cal.) 173; 44 C. J. 136; 43 C. J. 248; 3 McQuil. Mun. Corp. Section 1196, 1st Ed.; Id., 2nd Ed., Section 1283.

A meeting of the minds is as essential to the existence of a contract implied in fact as it is to an express contract. Thompson Yards v. Haakinson & Beaty Co., 209 Iowa 985. Manifestly the making of a contract may not be implied in a case in which an express contract is forbidden.

In Harrison County v. Ogden, 133 Iowa 677, which was an action to enjoin the payment of bridge fund warrants issued to one of the defendants while he was a member of the board of supervisors, the court, referring to Section 596, Code 1897, prohibiting any county officer from taking any warrant for less amount than that expressed on the face said:

"A demand against the county may be in a very informal shape and still be legal and represent an honest claim, and the very clear meaning of the statute is to prohibit speculation in any form of indebtedness issued by the county, and in any form or character of demand made against it. Any other con-

struction would destroy the very purpose of the law, and provide a complete cover and shield for the acts which are prohibited. It is further said that, even if the transaction falls within the prohibition of the statute, the county has received the benefit of the work, and that it is inequitable and unjust to hold the warrants void. It is a fundamental rule, however, that rights based on the violation of the law will never be enforced by the courts, and this without reference to the wish of either party to the transaction. If the court is advised that the transaction is illegal because in contravention of a statute making it a criminal offense, it is sufficient to justify a refusal to uphold the transaction in any way. Nelson v. Harrison County, supra; Berka v. Woodward, 125 Cal. 119 (57 Pac. 777, 45 L. R. A. 420, 73 Am. St. Rep. 31); Bank v. Owens, 2 Pet. (U. S.) 527 (7 L. Ed. 508); Hall v. Coppell, 7 Wall. (U. S.) 542 (19 L. Ed. 244).''

In Bay v. Davidson, 133 Iowa 688, which was an action to restrain payment for goods purchased by the town of a member of the town council, the question is discussed. The right to recover on the *quantum meruit* seems not to have been involved. It was said:

''That contracts such as are here complained of are against public policy is plainly manifest. The courts of the country, including this court, have repeatedly made pronouncement to that effect. And it is fundamental doctrine that a contract which is violative of public policy is void and will not be enforced. Guenther v. Dewien, 11 Iowa 133; Merrill v. Packer, 80 Iowa 543; Greenhold on Public Policy, 335. Thus, in Weitz v. Independent District, 78 Iowa 37, it appeared that the board of the defendant district had employed one of its own members to superintend the construction of a schoolhouse, and we held that the contract was void. The opinion there was put squarely upon the doctrine that it would be most unwise and against public policy to permit a board of directors to contract with one of its members in the name of the district. And it was said that such an agreement would in fact be between a portion of the members of the board on the one side, and a director as contractor on the other, and the contract might be determined by his own voice. Such a practice would give opportunity for

the grossest fraud. Secret understandings might be entered into between a majority of the members of the board by virtue of which different contracts might be parceled among them to the prejudice of the district. See, also, Langan v. Sankey, 55 Iowa 52; Gleason v. Railway (Iowa), 43 N. W. 517; Macy v. Duluth, 68 Minn. 452 (71 N. W. 687); Brown v. Bank, 137 Ind. 655 (37 N. E. 158, 24 L. R. A. 211); Burka v. Woodward, 125 Cal. 119 (57 Pac. 777, 45 L. R. A. 420, 73 Am. St. R. 31)."

In Wayman v. Cherokee, 204 Iowa 675, in which plaintiff sought to recover from defendant city on a contract for work and labor which he performed while his father was a member of the city council and it was claimed that the father had a financial interest in the work itself, it is said:

."Contracts entered into by a member of a city council to perform labor or to furnish material are contrary to public policy, in violation of the statute and void. Bay v. Davidson, 133 Iowa 688; James v. City of Hamburg, 174 Iowa 301; Liggett v. Shriver, 181 Iowa 260; Town of Hartley v. Floete Lbr. Co., 185 Iowa 861; Connolly v. City of Des Moines, 200 Iowa 97; Goldberg & Co. v. City of Cedar Rapids, 200 Iowa 139."

In considering the cases about to be cited it is to be remembered that the action now before us is not one brought by the city or by tax payers for affirmative equitable relief by cancellation or to enjoin payment of warrants, assessment certificates or evidence of indebtedness in which an offer to do equity would be essential to give the plaintiff standing to ask equity. In the present case the contractor and its assignee are the actors. They are asking affirmative relief by way of recovering compensation according to the terms of an express contract and (in effect) if the contracts are void, alternatively for the value of the labor and material furnished as upon an implied contract to pay that value. An action on the *quantum meruit* for the reasonable value of material and labor furnished includes a claim for reasonable profit. See Shaddock v. Schwartz, 246 N. Y. 288, 158 N. E. 872.

Hartley v. Floete Lumber Co., 185 Iowa 861, is not applicable. In that case the defendant corporation furnished to the plaintiff town merchandise which the plaintiff had power to purchase but the purchase of which from the defendant was

prohibited because one of defendant's stockholders was a member of the town council and was prohibited from being interested in any contract with the plaintiff by Section 668, Code, 1897. Plaintiff town sued to cancel warrants issued to defendant for this merchandise. Defendant by cross petition alleged that the merchandise was retained by the plaintiff and was of value to it and sought to recover the value so received and retained without profit. Plaintiff town had power in the usual way, through its ordinary agents, to make the purchases there in question. The merchandise purchased was capable of being returned and of being returned by the same agents who had the power to purchase it. Defendant was permitted to recover the actual value of the property received and retained without profit.

Kagy v. Independent District, 117 Iowa 694, was an affirmative suit in equity to declare purchase of goods by defendant independent district from a partnership, of which one of the school directors was a member, void. The court stated the question, "Shall the district, then, while keeping and enjoying the fruit of the contracts which it says were illegal and void, have judgment requiring the money paid upon such contracts to be returned to its treasury, and that, too, without any suggestion of a willingness to place the other parties *in statu quo*?" The answer was in the negative.

Likewise Diver v. Keokuk Savings Bank, 126 Iowa 691, was a suit in equity to restrain the collection of assessment certificates upon the ground, among others, that one of the members of the city council was interested in the work done. The question as stated by the court was, "May a tax payer after the work has been performed, and accepted by the city—there being no actual fraud shown—successfully resist payment therefor because of a violation of" the statute forbidding any member of the city council from being interested. The court answered this question in the negative on the authority of Kagy v. Independent District, and cases in other courts. In Loran v. City of Des Moines, 205 Iowa 1349, these cases were referred to. The case was decided upon another point.

James v. City of Hamburg, 174 Iowa 301, was a suit to compel the city council to deliver public improvement certificates which were claimed by intervener under an assignment to a bank of which a member of the city council was the executive

officer. It was held that the contract under which intervener claimed between the public contractor and the bank was "prohibited by law and absolutely void and is against public policy." The court referred to Diver v. Keokuk Sav. Bank, 126 Iowa 691, saying:

"There are some statements in this case which would seem to support intervener's contention, but a careful review of the case itself and of the authorities cited, we think, does not sustain such contention. We rather think that case sustains the contention of the plaintiff herein. The contract between the city and McMaken & Sons Company is not tainted with any of the fraud complained of here. That contract is valid. This case involves only the right of the bank to receive the proceeds of that contract. The money has not been paid and the city is not seeking to avoid the contract after performance, but stands ready to pay the same to anyone who is legally entitled to the proceeds. Under our construction of the law, the intervener has placed itself in a position so that it is not entitled to claim the proceeds under the assignment, whatever its other rights may be. It bases its claim on the assignment, and the assignment is void. The same doctrine is found in Kagy v. Independent District of West Des Moines, 117 Iowa 694, and cases therein cited. The other cases cited by intervener we have examined, but do not find them antagonistic in principle to the doctrine herein announced."

Some of the members of the court are of the opinion that cases such as Hartley v. Floete Lumber Company, 185 Iowa 861, are distinguishable upon the ground that the results of those cases may be sustained upon the doctrine of unjust enrichment—that is on the principle that one ought not to be permitted to unjustly enrich himself at the expense of another. We shall not be detained by a discussion of the question of whether or not the doctrine of unjust enrichment affords foundation for liability apart from implied contract. If it does then the measure of recovery is the value of the actual benefit realized and retained. Fargo Foundry Co. v. Village of Calloway, 181 N. W. 584, 148 Minn. 273. The plaintiff here is seeking to recover not the value of the benefit actually realized and retained by the defendant city but the reasonable value of the services

rendered and materials furnished which would include a reasonable profit to the plaintiff regardless of the question of whether the city actually received and retained a benefit therefrom, regardless of the amount of such benefit and regardless of the fact that the benefits were of such character that they could not be returned. The city had no option to return the alleged benefits. It was impossible from their very nature to return them.

To sustain the plaintiff's contention would be to permit one to obtain from a municipality an illegal contract for doing work impossible of return and by performing it enable him to recover the reasonable value of the services and materials furnished—to nullify the law by evasion and indirection and to recover the value of work done under a contract which the law prohibits.

Our cases cited and relied upon by plaintiffs, Marion Water Co. v. Marion, 121 Iowa 306; First National Bank v. Emmetsburg, 157 Iowa 555, 568; Sibley v. Ocheyedan Electric Co., 194 Iowa 950, 958; Humboldt County v. Dakota City, 197 Iowa 457, 465; Des Moines v. Horrabin, 204 Iowa 683, 687; Dunn v. Sioux City, 206 Iowa 908; Lee v. Ames, 199 Iowa 1342, (so far as applicable at all) are those of the irregular exercise of conferred power or the exercise of power assumed by an unauthorized officer, not those of total absence of power, or the exercise of assumed power in defiance of the express command of the legislature. The distinction appears from a consideration of Citizens' Bank v. Spencer, 126 Iowa 101. It is made in Iowa Electric Co. v. Winthrop, 198 Iowa 196.

While a discussion of the reasons for denying recovery either on express or implied contract would be superfluous as they are fully set out in Head v. Providence Ins. Co., 2 Cranch (U. S.) 127, 156; Zottman v. San Francisco, 20 Cal. 96, 81 Am. Dec. 96, 100; Brady v. Mayor, 16 How. Pr. (N. Y.) 432; Reichard v. Warren County, 31 Iowa 381; Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, 253, we may say that the purpose of statutes requiring submission to competitive bidding is, among other things, to obviate the necessity of any inquiry into the question of whether fraud or collusion was in fact resorted to. The law endeavors to remove temptation by making prohibited acts void regardless of motive. If the city or the tax payers were appealing to a court of equity for affirmative

relief only and were not offering to do equity or if the plaintiffs were seeking to recover not upon the *quantum meruit* for the value of the goods furnished and services performed, which would be their reasonable value upon the market and would include a reasonable profit, but were seeking to recover the actual reasonable cost of the labor and material without profit or the amount to which the city has been unjustly enriched thereby (as to which there is here no allegation) we would have for determination an entirely different question.

This suit is brought on the equity side of the court. It is, however, to recover on *quantum meruit*, which is a common law cause of action, but whether on the law or the equity side it is entirely outside the province of the court to suspend or override a positive statute, to confer upon a municipal corporation power which the legislature withholds from it. Equity follows the law. An often repeated quotation from Hedges v. Dixon County, 150 U. S. 182, 192, reads:

"Where a contract is void at law for want of power to make it, a court of equity has no jurisdiction to enforce such contract, or, in the absence of fraud, accident, or mistake, to so modify it as to make it legal and then enforce it. Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law. They are bound by positive provisions of a statute equally with courts of law, and where the transaction, or the contract, is declared void because not in compliance with express statutory or constitutional provision, a court of equity cannot interpose to give validity to such transaction or contract, or any part thereof."

1 Pom. Eq., Section 425; 21 C. J. 196.

 As plaintiff would not be entitled to recover on the *quantum meruit*, error, if any, in striking out the count on *quantum meruit* was without prejudice.—Affirmed.

DE GRAFF, KINDIG, ALBERT, WAGNER, and EVANS, JJ., concur.

FAVILLE, J. (dissenting)—The opinion of the majority, in my judgment, fails to either overrule or adequately distinguish this case from the rule recognized by us in Kagy v. Independent District, 117 Iowa 694; Diver v. Keokuk Sav. Bank, 126 Iowa

691; First National Bank of Red Oak v. City of Emmetsburg, 157 Iowa 555; Town of Hartley v. Floete Lumber Co., 185 Iowa 861; City of Des Moines v. Horrabin, 204 Iowa 683; and Loran v. City of Des Moines, 205 Iowa 1349.

I think we should do one thing or the other, either follow our former cases or overrule them; and I am therefore constrained to dissent. I am authorized to say that Justices Stevens and Grimm join in this dissent.

## SUPPLEMENTAL OPINION.

MORLING, J.—Plaintiff's petition for rehearing revolves around the contention that Section 6004, Code, 1924, applies only to special assessment cases. Section 6004 is Section 19 of the codifying act introduced into the Fortieth Extra G. A. as Code Commissioners' Bill or Senate File 169 entitled, ''A Bill for an Act to amend, revise, and codify Sections 3835, 3844 * * * 3877 * * * 3896 * * * of the Compiled Code of Iowa, and Sections 3849 * * * of the Supplement to said Code, relating to municipal corporations.'' A general analysis of the codifying act and amendments and comparison with the next previous general statutory enactments embraced in the codifying sections as found in Chapters 6 and 7, Title V, Code, 1897, and amendments, and discussion of the general purpose and effect of Senate File 169 as now contained in Chapter 308, Code, 1927, is not now necessary. The specific question presented is whether Section 19 of the codifying act as it was finally amended and adopted and as now found in Section 6004 of the Code of 1927 was intended by the legislature to apply as the language reads to ''all contracts for the * * * repair of street improvements * * *'' or to be limited to contracts for repair of street improvements to be paid for by special assessment. The effect generally of the codifying act upon the method by which such repairs are to be paid for need not now be discussed. As Senate File Number 169 was introduced into the General Assembly it did not require contracts for repairs to street improvements to be let on competitive bidding. Section 19 of the act as originally introduced provided:

''All contracts for the making or reconstruction of street improvements and sewers shall be let in the name of the city

or town, to the lowest bidder, by sealed proposals, upon giving notice * * *''

This was in substantial conformity with the then existing law, Compiled Code, Section 3877, Code, 1897, Section 813. It was, however, provided by Section 29 of the bill as introduced: ''The cost or any part thereof of the repair of any street improvement may be paid from the improvement fund or the general revenue.'' The bill, therefore, in its relation to repairs of street improvements as it was under consideration in the legislature was not restricted to repairs to be paid for from the proceeds of special assessments. The act comprehended the payment for repairs from the improvement fund or the general revenue. The Senate Committee reported numerous amendments to Senate File 169 among which were the preliminary definition, ''The word 'repair' shall include reconstruct and resurface'' (Code, 1927, Section 5974, Sub. 2), and the striking from Sections 17 and 19 of the words ''making or reconstruction'' and substituting therefor the words ''construction or repair''. (Code, 1927, Sections 6001, 6004, Senate Journal February 22, 1924, 738, 740.) These amendments were adopted (Id. 840, 841), as was an amendment to Section 19 (6004) making mandatory instead of permissive the requirement that if there be no newspaper, notice be given by posting. As thus amended Section 19 (6004) was enacted in its present form. It thus appears from the legislation as proposed in Senate File 169, and as amended and finally enacted that that very enactment comprehended the payment for repairs of street improvements from the improvement fund and the general fund. The court is unable to hold that the unrestricted language of Section 6004, ''All contracts for the * * * repair of street improvements * * *,'' must be restricted or limited to ''All contracts for the * * * repair of street improvements'' which are to be paid for by special assessment.

The specific point presented here and the legislation to which we have referred were not presented to or considered by the court in Dunn v. Sioux City, 206 Iowa 908, nor has it been previously decided.

Plaintiff seems to contend that this statutory limitation on the defendant's power to contract is nugatory, because defendant was contracting in its private or municipal capacity,

and was not exercising governmental powers. A municipal corporation is as much the creature of the legislature, as thoroughly limited by the laws of its creation or enacted for its government (exclusive of constitutional limitations not here involved, 19 R. C. L. 758) as thoroughly subject to legislative restrictions upon its powers and mode of exercising its powers, when acting in its private or corporate capacity as when exercising governmental powers. In either case it is an artificial body exercising only donated or delegated power. It may not legally act in defiance of legislative restrictions. Those dealing with it must at their peril take notice of the limitations upon its power.

Former supplemental opinion 234 N. W. 227, is withdrawn. The petition for rehearing is overruled.