(No. 2936—

ILLINOIS CENTRAL RAILROAD COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed March 14, 1939.*

GRAHAM & GRAHAM, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

The claimant filed its complaint on the 31st day of July, 1936, alleging that for many years last past it had been lawfully engaged in the business of a common carrier of freight and passengers for hire to and from points in the State of Illinois, and to and from points within the State of Illinois to points within the State of Illinois to points without the State of Illinois, and in the general business of conducting a railroad; that it owns a tract and right of way adjacent to the grounds of the Kankakee State Hospital, Kankakee, Illinois; that for the purpose of serving the Kankakee State Hospital, claimant agreed to lay out and construct a switch track or tracks connecting the main track with coal storage plant, power plant, generating plant and other buildings belonging to the State of Illinois at the Kankakee State Hospital.

It is further alleged that in order to maintain the tracks and equipment so as to be in safe and proper condition for operation and for service to the State Hospital at Kankakee, it became necessary to make certain repairs on the switch track and roadbed; that the claimant made the necessary repairs and replacements as are set forth in an itemized statement attached to the complaint. It is also alleged that such repairs were made at the direction and under the order of the officer there in charge of said track and grounds for the State of Illinois, pursuant to the custom and practice in such cases.

It is also alleged that after the work was done the items charged were approved and accepted by the officer in charge of the premises representing the State of Illinois.

A full and complete blue print showing the location of the tracks, and an itemized statement for the materials and services furnished, were attached to the complaint. The total bill amounts to $1,053.01.

The evidence shows there were 3,460 feet of track on the hospital grounds, and that such track was in a very bad state of repair; that it was unsafe to take a heavily loaded car or an engine over the track; that the ties were rotted and the rails were very apt to spread and as a matter of fact

the rails had become too far apart. The evidence conclusively shows that this track was unfit for use; that it was necessary to have the track in proper repair because the hospital with a population of about 4,000 inmates, plus its officers and attendants, daily needed, in the colder months, shipments of coal, and during all months, shipments of necessary supplies. The track was in daily use. Claimant repaired this track and made it safe to use—put many new ties in it, straightened the rails, furnished the spikes, plates and all necessary repair.

This track was originally constructed at the time the hospital was built—about 1878. The track west of Highland Avenue is maintained by the State. John Gallagher was the track supervisor in the employ of claimant. Sam Defiglia was the section foreman who had charge of the track involved. When the track needed repairs the section foreman would report to the supervisor, John Gallagher. Mr. Gallagher would then take it up with the hospital authorities for permission to make repairs on the track. The hospital was billed the actual cost, plus ten per cent. It was a part of Mr. Gallagher's duties to report the condition of the tract. For many years last past, the authorities of the State Hospital at Kankakee would acknowledge the bill and cause it to be paid. Mr. Gallagher, the superintendent, dealt direct with the Ground Superintendent. Mr. William L. Rieck, a resident of Kankakee, was Superintendent of Grounds at the time the repairs in question were needed. His title was Ground Superintendent. Among other things, it was a part of his duty to see that this track was cared for. The track served the power house, boiler room and warehouse, where supplies were received by the carload and unloaded on that track. All coal, grocery supplies and general supplies were brought in over that track. Mr. Rieck testified that he remembered that the section foreman advised him that the track was in need of repair and asked for permission to make the repairs, and he, Rieck, as Ground Superintendent, authorized him to go ahead, and gave him a letter, a copy of which letter is marked Exhibit One and is as follows:

"Illinois Central Railroad

GENTLEMEN: You are hereby allowed to proceed with the repairing of our switch as per the recommendation of your foreman, Sam Defiglia.

Kankakee State Hospital,
W. L. Rieck,
Ground Superintendent."

Pursuant to this letter, the claimant proceeded to make repairs as it had done many times in the past.

The Attorney General contends that Rieck had no authority to authorize the repairs; that under the statute, the Director of the Department of Public Welfare had such power, and had power to examine every plan and specification for new construction or repair exceeding in estimated value one thousand dollars, and shall examine into every plan and specification of new construction or improvement, if such improvement exceeds two hundred dollars in cost: Provided, that all contracts for new construction, improvement or repair must be approved by the State architect or his consulting engineer and by the board, if they exceed in value one thousand dollars, and by the fiscal supervisor, if they exceed in value two hundred dollars: Provided, further, that such approval is also required when such work is undertaken by the management of any institution without contract. There is also a provision pertaining to emergency, such as the breaking down of equipment.

As we view this matter, an emergency did not occur. The track was allowed to become in a bad state of repair by the neglect of the State employees located at Kankakee Hospital. The condition of the tract was not the result of an accident but the natural wear and tear that would occur to any track, and must have been known to all parties concerned. Here is a statute dealing directly with the subject in question, and this case illustrates the necessity of such a statute. The authority given the Illinois Central Railroad Company to make the repairs was so vague and informal that only those of the utmost integrity and good faith, such as the claimant, would fail to take advantage of the situation. Certainly, had the claimant been less honorable, under the circumstances, the State would have received a much larger bill. This manner of making repairs had been going on for many years, but it is the generally accepted rule that any usage or custom in conflict with an existing statutory enactment is void.

We cannot make an award in this case for these materials and repairs because of the statute.

In the case of *Green & Sons Company, a corporation* vs. *State of Illinois,* 9 C. C. R. 218, we held that there can be no recovery of amount fixed in express contract for services rendered thereunder, where the said contract is prohibited by law and a subsequent action will not lie to recover on quantum meruit for reasonable value of said services rendered under said contract on an implied contract to pay for same as no contract will be implied in a case where an express contract is forbidden and an award based on such claim must be denied. In that opinion we referred to the exhaustive annotation to the case of *Johnson County Savings Bank, et al.* vs. *City of Creston,* (212 Iowa 929) reported in 84 A. L. R. 926. Many additional authorities may be found in a similar annotation to the case of *United States Rubber Products* vs. *Batesburg,* 110 A. L. R. 144.

Counsel for claimant filed an able and persuasive reply brief but we are compelled to hold that whoever deals with a municipality does so with notice of the limitations on it or its agents' powers. All are presumed to know the law, and those who contract with it or furnish it supplies do so with reference to the law, and, if they go beyond the limitations imposed, they do so at their peril. This may seem unjust to the claimant but the answer to that is: That it is better that a private individual suffer as plaintiff must do in this case than have this court let down the bars and permit statutory enactments for the benefit of the public at large to be ignored so that the unscrupulous may unfairly and unjustly obtain public moneys. We cannot recognize or put the stamp of approval on the actions of the State officials in entering into such an informal contract.

The claim of the plaintiff, therefore, must be denied.