**G. Gifford MORRISON,**
**Plaintiff-Appellee,**

v.

**CITY OF WASHINGTON, Iowa,**
**Defendant-Appellant.**

No. 2–67695.

Court of Appeals of Iowa.

Jan. 26, 1983.

H. Richard Smith of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, and Craig Arbuckle of Day, Mecker, Bates & Arbuckle, Washington, for defendant-appellant.

C.W. Garberson of Shuttleworth & Ingersoll, Cedar Rapids, and G. Gifford Morrison, Washington, pro se, for plaintiff-appellee.

Heard by OXBERGER, C.J., and DONIELSON, SNELL, and JOHNSON, JJ.

DONIELSON, Judge.

The defendant, City of Washington, Iowa, appeals from the trial court's order reducing the special assessment against plaintiff's property in plaintiff's action seeking review of that assessment. On appeal, the defendant contends that the court erred in finding 1) that the assessment was not for benefits accruing to the community at large; 2) that the plaintiff carried his burden of establishing that the assessment exceeded the benefits conferred; and 3) that a lot was improperly assessed to the plaintiff. We reverse in part and remand in part.

■ Our scope of review in this equitable proceeding is de novo. Iowa R.App.P. 4; *City of Clive v. Iowa Concrete Block and Material,* 298 N.W.2d 585, 592 (Iowa 1980).

## I.

The plaintiff, G. Gifford Morrison, owned property consisting of his home and some vacant lots directly south of his home. The defendant, City of Washington, imposed a special assessment for street paving against plaintiff's property. The street paved was South Sixth Avenue which was a local residential street running in a north-south direction along the west side of plaintiff's property. South Sixth Avenue also served a county hospital and medical clinic. There were collector streets that also served the hospital and clinic. The paving project was part of a comprehensive plan to replace blacktop streets with concrete. The property owners paid for 80% of the costs with the city paying the remaining costs. In computing the assessments, the city used the points of benefits or Flint formula.

The plaintiff challenged the assessment levied against his property as exceeding the benefits conferred. At the trial, the plaintiff presented evidence attempting to show that the assessment exceeded the benefits. Particularly, the plaintiff attempted to show that the paving project mainly served the hospital and clinic. There was some evidence indicating that the city wanted to reduce its maintenance expenses by replacing the blacktop with concrete.

An exhibit showed that a certain lot, Lot 3R, was assessed to other parties. The City Engineer testified and exhibited that Lot 3R was in a different category than the other vacant lots on plaintiff's property. There was no testimony as to the specific value of the benefit, if any, which accrued to Lot 3R.

Following trial, the trial court rendered a decision upholding the assessment on the parcel occupied as a home, but reducing the assessment on plaintiff's remaining parcel from $4,854 to $2,937. The court determined that a large part of the benefit of the paving was the reduced cost of maintenance of the street and concluded that this was a benefit to the city which could not be specially assessed:

> Special assessments shouldn't be used to pay for those benefits accruing to the Community at large. *Goodell v. Clinton,* 193 N.W.2d 91, 95 (Iowa, 1971). The evidence here shows considerable benefit to the Community at large. The neighborhood had an all weather, hard surfaced street. The City substituted portland cement for the blacktop or oil and gravel surface existing before. This was, at least to a substantial extent, to decrease the maintenance of the street and its cost, to the community as a whole.

The trial court also concluded that Lot 3R was improperly assessed to plaintiff since it was shown in an exhibit to be assessed to other parties.

The defendant claimed in a motion for new trial and motion to amend findings of fact and conclusions that the trial court erred in determining Lot 3R was improperly assessed. There appears to be no express ruling on the motions.

## II.

■ The trial court reduced the assessment on the ground that the resurfacing

would decrease the maintenance costs to the city and thus benefit the community as a whole. We agree with defendant that the court erred in holding that the decreased cost of maintenance was a benefit to the community as a whole which could not be specially assessed to the abutting property owners. Special assessments are levied against abutting property owners to reimburse the city for making expenditures which enhance the value of the property. 70 Am.Jur.2d *Special or Local Assessments* § 18 (1973). This does not mean, however, that the community at large will not receive some incidental benefit. *See Duncan Development Corp. v. Crestview Sanitary District,* 22 Wis.2d 258, 264–65, 125 N.W.2d 617, 620 (1964); *Fisher v. Astoria,* 126 Or. 268, 277–78, 269 P. 853, 856–57 (1928) (fact that local improvement incidentally benefits community at large does not destroy characterization as a local assessment, provided the benefit to the proposed district is substantially more intense or is peculiar to it). The general rule is that

> [a] local improvement, although it may incidentally benefit all the property in the municipality and the public at large, is made primarily for the accommodation and convenience of inhabitants of a particular area in the community whose property receives a special benefit from the improvement either in the form of service or of enhancement of value. The fact that a local improvement results in a general benefit to the public at large does not require that the improvement be paid for out of general tax funds. But if the primary purpose and effect of the improvement is to benefit the public at large, the improvement is not local although it may incidentally benefit property in a particular locality.

70 Am.Jur.2d *Special or Local Assessments* § 20 (1973).

■ The cost of keeping a street in repair cannot be assessed to the abutting property owners, but should be paid out of the general revenue. *See Fuchs v. Cedar Rapids,* 158 Iowa 392, 400–01, 139 N.W. 903, 904–05 (1913); *Johnson County Savings Bank, et al. v. City of-Creston, et al.,* 212 Iowa 929, 932, 231 N.W. 705, 706 (1930). However, improvements or reconstruction work may be subject to special assessment. 70 Am.Jur.2d *Special or Local Assessments* § 42 (1973). Resurfacing is considered reconstruction for which a special assessment may be levied. *Id.*

■ We believe the paving of South Sixth Street in Washington, Iowa, was a reconstruction expenditure which could be specially assessed against the abutting property owners. While there may be an incidental benefit to the city in the way of reducing the cost of street maintenance, the principal benefit inures to the benefit of the abutting property owners. A different situation is presented in *Goodell v. City of Clinton,* 193 N.W.2d 91 (Iowa 1971). There, seventy of the eighty-four taxpayers affected objected to the special assessment of a street *widening* project. The court in *Goodell* noted that "the motivation for the improvement was part of a master plan for the orderly and safe movement of traffic based on the city's projected growth." *Id.* at 95.

■ The Iowa courts cannot redetermine which lots receive a special benefit as this is a legislative function. *City of Clive v. Iowa Concrete Block and Material,* 298 N.W.2d at 590 (a court cannot "review the city council's legislative determination that a piece of property within the boundaries of the assessment district receives a special benefit from a public improvement project"). The courts can only review the amount of the special assessment. *Id.* When there is a public benefit as well as a private benefit the assessment may be apportioned, but this, too, is a "question of legislative expediency." 70 Am.Jur.2d *Special or Local Assessments* § 84 (1973). In the instant case it was determined that the primary benefit was to the property owners. We believe that the trial court erred in reducing the

assessment on the grounds that the City would receive an incidental benefit of reduced maintenance costs.

## III.

Defendant's next contention is that the plaintiff failed to sustain the burden of establishing that the assessment exceeded the benefits conferred. This issue is closely related to the previous issue since the court appeared to have found that the assessment exceeded the benefits conferred *because* "a large part of the benefit of such resurfacing accrued to the city in general, in the form of ease of maintenance." Since we hold that the court made this determination in error, we believe plaintiff has failed to sustain the burden of establishing that the assessment exceeds the benefits conferred. *See Goodell v. City of Clinton,* 193 N.W.2d at 93 (Iowa 1971); *City of Clive v. Iowa Concrete,* 298 N.W.2d at 592.

## IV.

The defendant's final contention concerns Lot 3R. The trial court found that Lot 3R was also included in assessment number 130, concerning William and Dorothy Matson, and excluded it in consideration of the case. We believe that the determination of ownership of Lot 3R was an issue properly addressed by the court since the question is germane to the issue of whether the assessment was excessive. The trial court may address the issues arising from the pleadings. Iowa R.Civ.P. 176. However, the defendant filed a motion to amend the findings and conclusions regarding Lot 3R pursuant to Rule 179. In support of the motion, defendant filed an affidavit of the engineer who prepared the Final Assessment Plat and Schedule of the 1978 paving project in question, stating that the plat upon which the court relied was in error. Another plat, marked exhibit B, was attached as the correct description of the parcels included in the assessment districts 127 and 130. Plaintiff filed no resistance to defendant's motion and the court filed no ruling. We believe the court should address defendant's motion regarding the correct assessment district in which Lot 3R is located. We remand for this purpose only.

REVERSED AND REMANDED.

SCHLEGEL, J., takes no part.